(329 P.3d 1230)
No. 110,245

STATE OF KANSAS, *Appellee*, v. JEFF DICKEY, *Appellant*.

470

Opinion filed June 27, 2014.

*Samuel Schirer*, of Kansas Appellate Defender Office, for appellant.

*Charles Ault-Duell*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., PIERRON and STANDRIDGE, JJ.

STANDRIDGE, J: Jeff Dickey appeals from the sentence imposed by the district court after he pled guilty to one count of felony theft. Relying on *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), Dickey contends the district court violated his constitutional rights by classifying a 1992 juvenile adjudication for burglary as a person felony, which enhanced the penalty for his sentence beyond the statutorily prescribed maximum. Applying the holdings in *Apprendi* and *Descamps* to the facts presented here, we agree the district court erred by examining record evidence to determine whether Dickey's prior adjudication constituted a person felony for purposes of enhancing his current sentence. Although we find error, we believe it is significant to point out that *Descamps* was decided on June 30, 2013, so the district court in this case did not have the benefit of its guidance when sentencing Dickey on May 16, 2013. But under the analysis that is now required by *Descamps*, we necessarily must find that the district court was precluded from looking beyond the statutory elements of Dickey's 1992 prior burglary adjudication to determine whether it would now qualify as a person felony for purposes of enhancing the penalty for his current crime of felony theft beyond the statutorily prescribed maximum. Accordingly, and as explained in detail below, we must vacate Dickey's sentence with instructions to resentence him using a criminal history score of B.

## FACTS

On December 7, 2012, Dickey was charged with felony theft in Saline County, Kansas. Dickey pled guilty to the charge on April 9, 2013. A hearing was held on May 16, 2013, to consider sentencing on the theft conviction and whether to revoke Dickey's probation in four other cases. A presentence investigation (PSI) report was prepared prior to the hearing. Attached to the PSI was a criminal history worksheet, which reflected that Dickey had 55 prior offenses, including 3 person felonies, 12 nonperson felonies, and 40 nonperson misdemeanors. The individual who prepared the PSI designated Dickey's criminal history as category A based on a finding that Dickey had three adult prior convictions or juvenile adjudications for person felonies. See K.S.A. 2013 Supp. 21-6809 (offender falls into criminal history category A when offender's criminal history includes three or more adult convictions or juvenile adjudications for person felonies, in any combination). One of the three offenses scored as a person felony in Dickey's criminal history was a juvenile adjudication for burglary committed in October 1992, which was before the legislature enacted the Kansas Sentencing Guidelines Act (KSGA).

At the sentencing hearing, Dickey responded affirmatively when the court asked whether he had reviewed his criminal history and responded negatively when the court subsequently asked whether he had an objection to any of the convictions listed. During testimony elicited on direct examination by his attorney in support of Dickey's motion for a downward departure sentence, Dickey said he understood he had been placed in the criminal history category of A. After hearing the testimony and the arguments of counsel, the district court denied Dickey's motion for downward departure and sentenced Dickey to 16 months' imprisonment, to run consecutive to his sentences in the four other criminal cases in which his probation was revoked.

## ANALYSIS

At issue is whether Dickey was deprived of his constitutional rights when the sentencing court counted his 1992 juvenile adjudication for burglary as a person felony for criminal history pur-

poses to enhance his current sentence beyond the maximum authorized by law. The right to appeal from the district court's decision on this issue is specifically authorized by K.S.A. 2013 Supp. 21-6820(e)(3), which provides appellate courts with jurisdiction to consider a defendant's claim that the sentencing court erred "in determining the appropriate classification of a prior conviction or juvenile adjudication for criminal history purposes."

We note, as a preliminary matter, that Dickey raises this claim for the first time on appeal. Although our Supreme Court has held that constitutional issues generally cannot be raised for the first time on appeal, the court has recognized exceptions when:

" '(1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason.' [Citations omitted.]" *State v. Gomez*, 290 Kan. 858, 862, 235 P.3d 1203 (2010).

Two exceptions apply in this case. First, the claim of error asserted involves only a question of law on undisputed facts and is determinative of the case. See *State v. Conley*, 270 Kan. 18, 30-31, 11 P.3d 1147 (2000) (issues implicating *Apprendi* may be raised for the first time on appeal because they involve only questions of law arising on proved or admitted facts and are determinative of the cases). The claim of error asserted by Dickey here is that the sentencing court deprived him of his constitutional rights under the recent holding in *Descamps*. In *Descamps*, 133 S. Ct. at 2281-87, the United States Supreme Court held that a sentencing court may not look beyond the elements of a prior statutory conviction or adjudication for purposes of a sentencing enhancement under *Apprendi* unless the prior statute of conviction or adjudication satisfies certain requirements. Because resolving the issue of whether the district court deprived Dickey of his constitutional rights under *Descamps* depends on interpretation of the relevant statutory language, it involves only a question of law.

Second, consideration of issues implicating *Apprendi* generally are necessary to serve the ends of justice. See *Conley*, 270 Kan. at 30-31. This is especially true here given the timing in this particular case. Dickey was sentenced on May 16, 2013. The *Descamps* opin-

ion—which settled a split in the Circuit Courts of Appeals regarding when the sentencing court is permitted to look beyond the elements of a prior statutory conviction for purposes of a sentencing enhancement without violating *Apprendi*—was not decided by the United States Supreme Court until June 30, 2013. But *Descamps* applies to this case because the Supreme Court issued its opinion while it was still "pending on direct review [and] not yet final." See *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987). As such, consideration of the *Descamps* claim for the first time on appeal is necessary to serve the ends of justice and to prevent the denial of a fundamental right.

### Standard of review

The issue presented in this case requires us to interpret several different Kansas statutes. Interpretation of a statute is a question of law over which appellate courts have unlimited review. When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. *State v. Murdock*, 299 Kan. 312, 314, 323 P.3d 846 (2014).

### State v. Murdock

In considering whether the sentencing court improperly scored Dickey's criminal history based on misclassification of the pre-KSGA burglary adjudication in Kansas as a person felony, we are mindful that our Supreme Court recently issued an opinion in *Murdock* addressing a similar claim, albeit in the context of an out-of-state offense and the crime of robbery instead of burglary. This factual distinction is significant, as the court itself demonstrated by beginning its analysis with K.S.A. 21-4711(e), which, before recodification of the criminal code, governed the classification of out-of-state crimes and convictions.

"The state of Kansas shall classify the [prior out-of-state] crime as person or nonperson. In designating a crime as person or nonperson comparable offenses shall be referred to. If the state of Kansas does not have a comparable offense, the out-of-state conviction shall be classified as a nonperson crime." K.S.A. 21-4711(e).

See K.S.A. 2013 Supp. 21-6811(e) (same).

The court easily found Murdock's prior out-of-state robbery convictions were comparable to the Kansas crime of robbery. The more difficult question was whether the sentencing court was required to compare Murdock's out-of-state robbery offenses to robbery under the version of the Kansas statute in effect at the time the prior crimes were committed or to robbery under the current version of the Kansas statute. In answering this question, the court found indistinguishable its earlier analysis in *State v. Williams*, 291 Kan. 554, Syl. ¶ 4, 244 P.3d 667 (2010), a case presenting the same issue but in the context of a prior out-of-state crime committed *after* the KSGA was adopted. As a result, the *Murdock* court extended the scope of *Williams* to hold that when classifying a prior out-of-state conviction as person or nonperson, a prior out-of-state crime—whether committed before or after Kansas adopted the KSGA—must be compared to the comparable offense under the Kansas statute in effect at the time the prior out-of-state crime was committed. See *Murdock*, 299 Kan. 312, Syl. ¶ 2, 323 P.3d 847 ("A fundamental rule for sentencing is that the person convicted of a crime is sentenced in accordance with the sentencing provisions in effect at the time the crime was committed.").

Applying that rule, the court proceeded to compare Murdock's prior out-of-state robbery convictions to robbery as defined in K.S.A. 21-3426 (Ensley 1981) to classify the convictions as person or nonperson for purposes of calculating his criminal history. But the penalty provision of the pre-1993 statute did not designate robbery as person or nonperson, instead classifying it only as a class C felony. In the absence of such a designation, Murdock argued his prior out-of-state convictions necessarily had to be scored as nonperson offenses under K.S.A. 21-4710(d)(8), which provided that "[u]nless otherwise provided by law, unclassified felonies and misdemeanors, shall be considered and scored as nonperson crimes for the purpose of determining criminal history." See K.S.A. 2013 Supp. 21-6810(d)(6) (same). Although the court specifically rejected Murdock's suggestion that K.S.A. 21-4710(d)(8) provided a mechanism to draw a distinction between current sentencing statutes and the pre-1993 criminal statutes, the majority nevertheless held, as a matter of law, that all pre-1993 out-of-state convictions

must be scored as nonperson offenses based on controlling precedent in *Williams*. Three of the justices in *Murdock* dissented from that part of the majority's holding that required all out-of-state crimes committed prior to 1993 be classified as nonperson offenses. Although limited to out-of-state convictions, the dissent expressed concern that "all in-state convictions prior to 1993, regardless of how violent or heinous, appear to be subject to the same outcome" because the majority's decision was based on the court's prior holding in *Williams* as controlling precedent on the issue. *Murdock*, 299 Kan. at 319 (Rosen, J., dissenting, joined by Luckert and Moritz, JJ.).

Based on our review of the opinion and the analysis upon which the holding is based, the court in *Murdock* appears to have considered and resolved two separate and distinct issues before reaching its final decision. First, the court extended its prior holding in *Williams* to conclude as a matter of law that when classifying a prior out-of-state conviction as person or nonperson, a prior out-of-state crime—whether committed before or after Kansas adopted the KSGA—must be compared to the comparable offense under the Kansas statute in effect at the time the prior out-of-state crime was committed. *Murdock*, 299 Kan. at 317-18 (overruling *State v. Mitchell*, No. 104,833, 2012 WL 1649831, at *7 [Kan. App. 2012] [unpublished opinion], *rev. granted* 300 Kan. 1106 (2014); *State v. Mims*, No. 103,044, 2011 WL 4563068, at *5 [Kan. App. 2011] [unpublished opinion], *rev. denied* 294 Kan. 946 [2012]; *State v. Henderson*, No. 100,371, 2009 WL 2948657, at *3 [Kan. App. 2009] [unpublished opinion], *rev. denied* 290 Kan. 1099 [2010]; and *State v. Boster*, No. 101,009, 2009 WL 3738490, at *4 [Kan. App. 2009] [unpublished opinion], *rev. denied* 290 Kan. 1096 [2010]). Second, the court recognized that Kansas did not begin classifying crimes as person or nonperson offenses until the KSGA was enacted in 1993. In the absence of a person or nonperson classification in the version of the statute with which a prior out-of-state offense is to be compared or a statutory mechanism pursuant to which such a comparison is permitted, the court ultimately held that all prior out-of-state convictions committed before Kan-

sas adopted the KSGA must be scored as nonperson offenses. *Murdock*, 299 Kan. at 318-19.

Significantly, both of the issues considered in *Murdock* were resolved by the court in the context of a prior out-of-state conviction for the crime of robbery. Conversely, this case presents a prior adjudication for the crime of burglary committed in Kansas. Given these distinctions, our first task is to determine whether the holding announced by the court in *Murdock* on either one of these issues applies to this case.

We first examine the court's holding that any prior conviction for an out-of-state crime must be compared to the comparable offense under the Kansas statute in effect at the time the prior out-of-state crime was committed. The stated rationale by the court for this holding was (1) the lack of statutory guidance on such a comparison and (2) the analysis it conducted under similar facts in *Williams*.

"In the absence of a statutory directive, we are left with our decision in *Williams* that the comparable Kansas offense should be determined as of the date the out-of-state offenses were committed. Even though the State seeks a different rule in this appeal, we must emphasize we adopted the current rule at the State's urging in *Williams*. See 291 Kan. at 559 (State argued this court should score the Washington offenses according to their Kansas equivalents when the Washington offenses were committed).

"Our analysis in Williams is indistinguishable from the analysis applicable to the circumstances presented here, and the same policy considerations continue to apply. Using the date the prior out-of-state crime was committed to calculate a defendant's criminal history score is 'consistent with our fundamental rule of sentencing for a current in-state crime: sentencing in accordance with the penalty provisions in effect at the time the crime was committed.' 291 Kan. at 560. Moreover, fixing the penalty parameters as of the date the crime was committed is fair, logical, and easy to apply. 291 Kan. at 560." *Murdock*, 299 at 317-18.

Again, we find it significant that the statute to which the *Murdock* court refers as failing to provide necessary guidance is K.S.A. 21-4711(e), which applies only to classification of prior out-of-state crimes, while the case here does not involve a prior out-of-state crime. The facts here present a prior adjudication for the crime of burglary committed in Kansas. Thus, unlike the absence of statutory guidance as in *Murdock*, the applicable statute here specifi-

cally provides that a past burglary adjudication occurring prior to July 1, 1993, should be scored for criminal history purposes in the current case:

(1) as a prior person felony if the prior adjudication would be classified under the current statute as the burglary of a dwelling; and

(2) as a prior nonperson felony if the prior adjudication would be classified under the current statute as the burglary of a nondwelling. K.S.A. 2013 Supp. 21-6811(d) (formerly K.S.A. 21-4711[d]).

Given the specific type of offense committed by Dickey in 1992 was a burglary adjudication, we are bound by the statutory provision set forth above governing the manner in which a criminal history score must be calculated for a burglary adjudication occurring prior to July 1, 1993. Pursuant to K.S.A. 2013 Supp. 21-6811(d), we conclude that Dickey's prior burglary adjudication must be compared to the current version of the burglary statute in considering whether it should be scored as a person or nonperson crime in his criminal history and expressly decline to rely on the holding in *Murdock* in coming to that conclusion.

We now move on to examine the second and seemingly more divisive issue decided in *Murdock*: that all prior out-of-state convictions committed before Kansas adopted the KSGA must be scored as nonperson offenses. Like the first issue, the rationale given by the majority of the members of the court for this holding was (1) the absence of a statutory mechanism to determine whether a pre-KSGA conviction should be scored as a person or nonperson crime for criminal history purposes and (2) the analysis it conducted under similar facts in *Williams*.

"We hold that Murdock's two prior out-of-state convictions must be scored as nonperson offenses under K.S.A. 21-4710(d)(8) following our controlling *Williams* precedent. We recognize this rule results in the classification of all pre-1993 crimes as nonperson felonies—an outcome the State characterizes as unreasonable. But the solution to the State's complaint sits with the legislature.

"As noted above, the legislature enacted K.S.A. 21-4724(c)(1), instructing the Department of Corrections to recalculate certain inmates' criminal history classifications 'as if the [prior] crime were committed on or after July 1, 1993.' The

legislature can amend the KSGA to address this issue as well if it deems an amendment appropriate." *Murdock*, 299 Kan. at 319.

But again, there is a statutory mechanism for determining whether a pre-KSGA Kansas (rather than an out-of-state) conviction or adjudication for burglary—the prior crime at issue in this case—should be counted as person or nonperson crimes for purposes of scoring a defendant's current criminal history. K.S.A. 2013 Supp. 21-6811(d), which incorporates K.S.A. 2013 Supp. 21-5807, as amended, by reference, states that prior burglary adult convictions and juvenile adjudications will be scored for criminal history purposes (1) as a prior *person* felony if the prior conviction or adjudication was classified as a burglary within a structure *that is a dwelling*; and (2) as a prior *nonperson* felony if the prior conviction or adjudication was classified as a burglary within a structure *that is not a dwelling*. K.S.A. 2013 Supp. 21-6811(d).

Based on the statutory framework in Kansas for classifying an offender's criminal history as set forth above, it is clear that the legislature intended to create a separate and distinct rule to govern classification when the prior conviction or adjudication was committed out of state. See K.S.A. 2013 Supp. 21-6811(e). And the court's rationale in *Murdock* was based on statutory interpretation of the legislative mandate in that subsection of the statute and the absence of any other applicable legislature mandates in the statutory framework as a whole. Conversely, the issue here is governed by K.S.A. 2013 Supp. 21-6811(d), a subsection of the statute that governs classification when the prior offense was burglary, because Dickey's pre-KSGA adjudication was for a burglary that was committed in Kansas. Because both the legal analysis and the holding in *Murdock* are firmly tethered to the text of K.S.A. 21-4711(e) and the absence of any other applicable legislature mandate, neither the analysis nor the holding in *Murdock* apply to the issue presented in this case.

*Classifying Dickey's 1992 adjudication for burglary*

At the time of Dickey's 1992 adjudication, burglary was defined as

"knowingly and without authority entering into or remaining within any: (1) Building, manufactured home, mobile home, tent or other structure, with intent to commit a felony or theft therein; or (2) motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony or theft therein.

"Burglary as described in subsection (1) is a class D felony. Burglary as described in subsection (2) is a class E felony." K.S.A. 1991 Supp. 21-3715.

In 1993, the legislature adopted the KSGA, which classified burglaries as either person or nonperson crimes. Also in 1993, K.S.A. 21-3715 reclassified burglaries of dwellings as person felonies, while other burglaries were nonperson felonies. See K.S.A. 21-3715 (Furse 1995); L. 1993, ch. 291, sec. 74. As we noted in the preceding section, the sentencing statute in effect when Dickey committed the current offense, however, provides that a past burglary adjudication occurring prior to July 1, 1993, should be scored for criminal history purposes:

(1) as a prior person felony if the prior adjudication would be classified under the current statute as the burglary of a dwelling; and

(2) as a prior nonperson felony if the prior adjudication would be classified under the current statute as the burglary of a nondwelling. K.S.A. 2013 Supp. 21-6811(d).

The statute also provides that the State has the burden to establish by a preponderance of the evidence the facts necessary for the court to determine how the prior adjudication would be classified under the current statute. K.S.A. 2013 Supp. 21-6811(d).

Given this statutory language, it might appear as if the question presented on appeal—whether the sentencing court erred in counting Dickey's prior juvenile adjudication for burglary as a person felony and enhancing his sentence—can be answered by deciding whether the State established by a preponderance of the evidence that the 1992 juvenile adjudication for burglary involved a dwelling. But that is not the claim of error asserted by Dickey here. See *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) ("Other than the *fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury,

and proved beyond a reasonable doubt." [Emphasis added.]). Dickey claims the sentencing court violated *Apprendi* by going beyond the fact that he had a pre-KSGA unclassified prior adjudication for burglary to consider other facts in ultimately deciding that his prior burglary adjudication involved a dwelling and was a person felony, which in turn increased the penalty for his current crime beyond the prescribed statutory maximum.

Based on the manner in which Dickey has framed the issue and the cases he relies on in support thereof, the question of whether the 1992 burglary actually involved a dwelling is irrelevant. Instead, the relevant question is whether the sentencing court was constitutionally permitted to go beyond the fact that Dickey had a prior adjudication for burglary in 1992 to determine that Dickey's prior adjudication for burglary qualified as a person felony and then to use that determination to enhance his current sentence. In order to answer that question, we must apply the analysis set forth by the United States Supreme Court in *Descamps v. United States*, 570 U.S. \_\_\_, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013).

In *Descamps*, the Government sought to use the defendant's prior burglary conviction in California to increase his current sentence under the federal Armed Career Criminal Act (ACCA), a sentence enhancement statute based on prior convictions that is similar to California's three strikes law. See 18 U.S.C. § 924(e) (2012); Cal. Penal Code § 667(b-i) (West 2010); Cal. Penal Code § 1170.12(a)-(d) (West 2010). Unlike the definition for generic burglary under the ACCA, the California burglary statute in effect at the time of the defendant's prior burglary conviction did not require that there be an unlawful entry; therefore, the definition in the California statute was much broader than the ACCA definition of burglary. See Cal. Penal Code § 459 (West 2010). In order to resolve a federal circuit court split on whether the sentencing court could look beyond the elements of a prior statutory conviction when the prior statute of conviction contains a single and "indivisible" set of elements that is broader than the elements in the corresponding offense as set forth in the ACCA, the Court granted certiorari.

The *Descamps* Court began its analysis by reviewing its earlier decisions resolving issues similar to, but distinct from, the one presented. The first of those decisions was *Taylor v. United States*, 495 U.S. 575, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990), where the defendant was charged with being a felon in possession of a firearm. The ACCA imposes a minimum sentence of 15 years' imprisonment for any felon who possesses a firearm after three prior convictions for serious drug offenses or violent felonies. The ACCA defines a violent felony as any crime punishable by imprisonment for a term exceeding 1 year that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). The Government asked the sentencing court to invoke the 15-year minimum (above the statutory maximum for the crime charged) based on the defendant's prior burglary conviction, which the Government alleged qualified as a predicate offense because burglary was defined as a violent felony under the ACCA.

But the *Taylor* Court disagreed, concluding instead that the proper inquiry for a sentencing court in this situation is not whether the defendant's actual conduct constituted a crime of violence (*e.g.*, whether he, in fact, brought a gun, confronted any individuals inside the house, or conducted his crime in any particularly "violent" way) but whether the elements of the crime of conviction necessarily matched the elements of the corresponding crime under the ACCA. For purposes of determining if such a match existed, the Court generically defined burglary under the ACCA as "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." 495 U.S. at 598. This type of elements-only comparison has become known as the " 'formal categorical approach.' " *Descamps*, 133 S. Ct. at 2281, 2287.

The *Taylor* decision went on to acknowledge, however, a "narrow range of cases" in which the sentencing court may look beyond the elements of a prior conviction to examine the charging papers and jury instructions to determine whether the prior conviction constitutes a predicate offense under the ACCA. 495 U.S. at 602.

This alternative method has become known as the "modified categorical approach" and applies when the statute defining the prior offense elements is broader than the corresponding generic offense but the jury was actually instructed that it had to find all the elements of the predicate offense in order to convict the defendant. *Descamps*, 133 S. Ct. at 2281, 2283-84. Because not all of the Missouri second-degree burglary statutes at the time of Taylor's convictions included every element of generic burglary under the ACCA and the Court was unable to determine from the sparse record upon which of those statutes Taylor's convictions were based, the Supreme Court vacated the judgment and remanded the case for further proceedings. *Taylor*, 495 U.S. at 602.

In *Shepard v. United States*, 544 U.S. 13, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005), the Supreme Court was asked to decide whether—in determining whether a prior conviction constitutes a predicate offense under the ACCA—the sentencing court could look beyond the elements of a Massachusetts burglary statute that included "boats and cars" as well as buildings. Because the defendant pleaded guilty to violating the statute, the Court first confirmed that the categorical approach set forth in *Taylor* applies not just to jury verdicts, but also to plea agreements. Specifically, the Court held that "a conviction based on a guilty plea can qualify as an ACCA predicate only if the defendant 'necessarily admitted [the] elements of the generic offense.'" *Descamps*, 133 S. Ct. at 2284 (quoting *Shepard*, 544 U.S. at 26).

The Court then addressed the issue presented by the divisible nature of the Massachusetts burglary statute. Because the burglary statute encompassed "boats and cars" as well as buildings, it was impossible to tell from the statutory elements of the crime of conviction upon which of these alternative offenses Shepard's conviction was based. The Government argued that the sentencing court should be able to look to the facts in the police reports or complaint applications to determine whether Shepard's convictions fell within the generic ACCA definition of burglary. But the Supreme Court was not persuaded by this argument, holding instead that the sentencing court is "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of

plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented" to determine if the defendant had pleaded guilty to entering a building or, alternatively, a car or boat. *Shepard*, 544 U.S. at 16. The Court emphasized that the purpose of such an inquiry was not to determine "what the defendant and state judge must have understood as the factual basis of the prior plea," but only to assess whether the plea was to the version of the crime in the Massachusetts statute (burglary of a building) corresponding to the generic offense. 544 U.S. at 25 (plurality opinion).

Authored by Justice Souter, the majority in *Shepard* based its holding on the statutory framework of the ACCA. In Part III of the opinion, however, Justice Souter reasoned that the rationale for placing limits on the sentencing court in looking beyond the prior statutory conviction for purposes of sentencing enhancement, while focusing on the ACCA, likewise implicates the Sixth Amendment jury trial concerns expressed in *Apprendi*. *Shepard*, 544 U.S. at 24-25 (plurality opinion) (citing *Apprendi*, 530 U.S. at 490; *Jones v. United States*, 526 U.S. 227, 243 n.6, 119 S. Ct. 1215, 143 L. Ed. 2d 311 [1999]). Although Justice Souter's Sixth Amendment discussion only garnered a four-Justice plurality, Justice Thomas, the fifth vote, took an even stronger view of the need for constitutional protection and *Apprendi*. Going further than the majority, Justice Thomas argued that "the [judicial] factfinding procedure the [majority] rejects gives rise to constitutional error, not doubt"; he further argued that even the "limited factfinding" approved by the majority and by the Court in *Taylor* ran afoul of *Apprendi*. 544 U.S. at 28 (Thomas, J., concurring in part and concurring in the judgment).

The Supreme Court's most recent opinion discussing application of the categorical approach and its "modified" counterpart is *Descamps*. Like the defendants in *Taylor* and *Shepard*, Descamps was convicted of being a felon in possession of a firearm and the Government sought to enhance his sentence based on a prior conviction for burglary. Arguing the categorical approach was applicable, Descamps maintained the sentencing court could not count his prior burglary conviction as a predicate offense under the ACCA because the California statute under which he pleaded guilty was

broader than the corresponding generic offense under the ACCA in that it did not require an unlawful entry and was not divisible in any way. Not persuaded by Descamps' argument, the district court determined the modified categorical approach was appropriate. After reviewing the record of the plea colloquy, the district court determined Descamps admitted the elements of a generic burglary when entering his plea based on the prosecutor's proffer that the crime " ' "involve[d] the breaking and entering of a grocery store" ' " and Descamps' subsequent failure to object to that statement. 133 S. Ct. at 2282. Accordingly, the district court enhanced Descamps' sentence, and the Court of Appeals for the Ninth Circuit affirmed.

Applying the same analysis as in *Taylor* and *Shepard*, the Supreme Court reversed the decision of the district court. *Descamps*, 133 S. Ct. at 2283. The Court reiterated that a sentencing court can utilize a "modified categorical approach" when a prior conviction involves a "divisible statute," *i.e.*, a statute which comprises multiple, alternative versions of the crime. 133 S. Ct. at 2284. When such a statute is involved, the sentencing court may consult "a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." 133 S. Ct. at 2284. After making this determination, the sentencing "court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." 133 S. Ct. at 2281. But the Court found that Descamps' prior statute of conviction was not comprised of multiple, alternative versions of the crime. When the statute is "indivisible" (because it does not contain alternative elements) and criminalizes a broader swath of conduct than the relevant generic offense, the *Descamps* Court held that the sentencing court is precluded from utilizing the "modified categorical approach" and may not consult anything more than the statutory elements of the prior crime of conviction. 133 S. Ct. at 2281-83.

There are two important aspects of the *Descamps* decision that stand out. The first is that the modified categorical approach can be applied only when dealing with a divisible statute that "sets out

one or more elements of the offense in the alternative." 133 S. Ct. at 2281-82. If the prior statute under which the defendant was previously convicted is indivisible, the modified categorical approach is inapplicable. And if the modified categorical approach is inapplicable, the sentencing court may not consult anything more than the statutory elements of the prior crime of conviction. 133 S. Ct. at 2281-83.

The second is that application of the modified categorical approach must only "focus on the elements, rather than the facts, of a crime." 133 S. Ct. at 2285. If the modified categorical approach does apply to a prior conviction, courts should use the record documents to determine which statutory phrase the defendant was necessarily convicted under and not to determine the facts of the underlying crime. After pinpointing the statutory phrase, courts should then use those documents to analyze whether that phrase matches the corresponding element of the generic offense. 133 S. Ct. at 2285.

Utilizing the legal principles dictated by *Descamps*, we begin by examining the pre-1993 burglary statute under which Dickey was adjudicated in order to determine whether the categorical approach or the modified categorical approach applies to our analysis. Because the modified categorical approach is applicable only when the defendant was convicted of violating a divisible statute and then, only to the extent it is necessary to determine which statutory phrase formed the basis for the conviction, we begin with that determination. A criminal offense is "divisible" only when a statute lists multiple, alternative elements, thereby effectively creating several different crimes. 133 S. Ct. at 2285. Notably, however, the modified categorical approach will not be applicable to every statute that is divisible. This is because, in some cases, none of the alternative elements will match any elements of the corresponding generic crime. Post-*Descamps*, a case involving a prior statute of conviction for burglary containing alternative elements, none of which match any element of a generic statute, is virtually indistinguishable from a case involving a prior statute of conviction for burglary containing a single and indivisible set of elements; thus, the modified approach has no role to play. 133 S. Ct. at 2286 ("Our

decisions authorize review of the plea colloquy or other approved extra-statutory documents only when a statute defines burglary not [as here] overbroadly, but instead alternatively, *with one statutory phrase corresponding to the generic crime and another not.*" [Emphasis added.]).

In this case, the burglary statute forming the basis for Dickey's prior juvenile adjudication was comprised of multiple, alternative versions of the crime but none included an element relating to whether the structure was a dwelling:

"Burglary is knowingly and without authority entering into or remaining within any: (1) Building, manufactured home, mobile home, tent or other structure, with intent to commit a felony or theft therein; or (2) motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony or theft therein.

"Burglary as described in subsection (1) is a class D felony. Burglary as described in subsection (2) is a class E felony." K.S.A. 1991 Supp. 21-3715.

Because none of the alternatives in the prior version of the statute include any element relating to whether the structure was a dwelling, the sentencing court was permitted to engage in only a categorical comparison of the prior and current burglary statutes to determine whether to use the prior adjudication to increase Dickey's current sentence. Under that approach, we compare only the elements of the burglary statute forming the basis of the defendant's prior conviction or adjudication and the elements of the generic offense, which in this case is the current version of the burglary statute. The prior conviction or adjudication will qualify as a predicate crime for sentence enhancement purposes under the categorical approach only if the elements of the prior statute "are the same as, or narrower than, those of the generic offense." *Descamps*, 133 S. Ct. at 2281.

The "generic" offense is found within K.S.A. 2013 Supp. 21-5807(a)(1), which sets forth the current elements of burglary, a person felony, as "without authority, entering into or remaining within any [*d*]*welling*, with intent to commit a felony, theft or sexually motivated crime therein." (Emphasis added.) The crucial element triggering the classification of the generic offense as a person felony is that the structure burglarized "is a dwelling." In

comparing the 1991 version with the current one, it is clear that the prior version of the burglary statute under which Dickey was adjudicated did not include any element relating to whether the structure was a dwelling. See K.S.A. 1991 Supp. 21-3715. Because the elements in the statute criminalizing Dickey's prior adjudication sweep more broadly than the elements in the current burglary statute, we can categorically say that Dickey's prior adjudication for burglary would not have involved a dwelling and thus would not have been a person felony under the current burglary statute. See K.S.A. 2013 Supp. 21-6811(d).

Based on this analysis, the sentencing court erred in invoking the modified categorical approach to look behind Dickey's conviction in search of record evidence to determine whether Dickey's prior adjudication involved a dwelling, which in turn would have made it a person felony under the generic offense (the current statute). And because burglarizing a dwelling was not an element, or an alternative element, of K.S.A. 1991 Supp. 21-3715 under the applicable categorical approach, Dickey's adjudication under that statute does not count as a person felony and, in turn, cannot be used to raise his criminal history score from B to A.

Before moving on to the final issue of invited error, we find it essential to our decision today that the United States Supreme Court adopted as a majority in *Descamps* what it had supported as a plurality in *Shepard*: its ruling was grounded not only in the statutory construction of the ACCA but also in the Sixth Amendment right to jury trial under *Apprendi*. After first applying a statutory construction analysis under the ACCA as it did in *Shepard*, the Court turned to the "Sixth Amendment underpinnings" of the analysis. The Court held that a sentencing court's factfinding "would (at the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction. Those concerns, we recognized in *Shepard*, counsel against allowing a sentencing court to 'make a disputed' determination 'about what the defendant and state judge must have understood as the factual basis of the prior plea.' " *Descamps*, 133 S. Ct. at 2288 (quoting *Shepard*, 544 U.S. at 25). Thus, in *Descamps*, a majority of the United States Supreme Court held that a sentencing court's decision to enhance

a defendant's current sentence based on the record of a prior conviction implicates the Sixth Amendment under *Apprendi*. Given Dickey's claim in this case is grounded in *Apprendi* and not in the statutory scheme of the ACCA, the *Descamps* Court's reliance on *Apprendi* as an alternative ground to support its decision is significant here.

### Invited error

The State argues the invited error doctrine precludes Dickey from pursuing his claim for relief on appeal. For the reasons stated below, we are not persuaded by this argument.

Like judicial estoppel, the doctrine of invited error precludes a party from asking a district court to rule a given way and thereafter challenging the court's ruling on appeal. See *State v. Hargrove*, 48 Kan. App. 2d 522, Syl. ¶ 2, 293 P.3d 787 (2013) (describing invited error). As a judicially created rule, the doctrine of invited error "should be tailored as necessary to serve its particular purpose without unnecessarily thwarting the ends of justice." 48 Kan. App. 2d at 553. This is especially true in a case like this where there is a statute that provides appellate courts with jurisdiction to consider the precise issue presented. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010) (Absent some constitutional infirmity, it is the duty of the appellate courts to carry out the intent of the legislature as clearly expressed in the words of the statute itself.). But the State seeks to have us expansively apply the doctrine of preclusion beyond errors by the district court that Dickey affirmatively invited, encouraged, induced, or participated in causing to include errors made by the court to which Dickey passively acquiesced or failed to object.

The criminal history worksheet prepared prior to sentencing reflected that Dickey had 55 prior offenses, including 3 person felonies, 12 nonperson felonies, and 40 nonperson misdemeanors. Attached to the original worksheet was a supplemental criminal history worksheet which set forth a table presenting additional information about each of the prior offenses. The table was 11 columns wide, 61 rows long, and spanned four pages. The following information is embedded in the table at row 57, which is located

on page four of the supplemental worksheet, which in turn is attached to the PSI:

| Statute | Description | Jurisdiction Code | State | County | City | Conviction Date | Case # | Conviction Code | Amended Code | Source of Information |
|---------|-------------|-------------------|-------|--------|------|-----------------|--------|-----------------|--------------|-----------------------|
| 21-3715 | Burglary | S | KS | Saline | Salina | 10/12/1992 | 92CRJ44A | JFP | | Saline County PSI 12CR718 |

On page one of the supplemental worksheet, there was a list of 22 different conviction codes and corresponding classifications, one of which identified the conviction code "JFP" denoted above as "Juvenile Felony Person." The worksheet identified a prior PSI as the source for the limited information provided about this prior adjudication.

As can be seen, the last column of the worksheet identified a prior PSI as the source for the limited information provided about this 1992 adjudication. The conviction code "JFP" was denoted on another page of the worksheet as "Juvenile Felony Person." Significantly, the State contends the doctrine of invited error applies here based solely on the following questions directed to Dickey at his sentencing hearing about this embedded information:

"THE COURT: And, Mr. Dickey, have you reviewed your criminal history as set forth in the criminal history worksheet attached to the PSI?
"MR. DICKEY: Yes, ma'am.
"THE COURT: Do you have any objection to any of the convictions listed in that document?
"MR. DICKEY: No ma'am.
. . . .
    "Q. [DEFENDANT'S COUNSEL:] Okay and we are here today to ask the Court to consider two things; one of them to . . . ask the Court to consider you—to place you on probation in this particular case, the primary case, and to ask the Court to modify the sentences in the probation violation cases, is that correct?
    "A. [MR. DICKEY:] Yes, ma'am.
    "Q. And you understand that for starters your criminal history A is that correct do you agree with that?
    "A. Yes ma'am."

There is no dispute that Dickey told the court that he had reviewed his criminal history worksheet; he did not object to any of the convictions listed; and in response to his attorney's question about whether he understood that he had a criminal history score

of A, he responded affirmatively. But it is completely irrational to equate these fleeting and perfunctory responses to routine and prefatory questions to invited error. Neither the record evidence nor cases cited by the State support its argument that the "Yes, ma'am," "No, ma'am," "Yes, ma'am," and "Yes, ma'am" were affirmative invitations by Dickey to count his 1992 juvenile adjudication for burglary as a person felony. To construe Dickey to have invited the court to do so for purposes of precluding him from pursuing his claim for relief not only counters the underlying purpose of the doctrine but also unnecessarily thwarts the ends of justice.

Based on the analysis in *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), which is mandatory United States Supreme Court precedent that was not available to the district court when sentencing Dickey on May 16, 2013, we find the sentencing court erred in classifying Dickey's pre-KSGA juvenile adjudication for burglary a person felony, which escalated his criminal history score from B to A and enhanced the penalty for his sentence beyond the statutorily prescribed maximum. Accordingly, Dickey's sentence is vacated and remanded with instructions to resentence him using a criminal history score of B.

Sentence vacated and case remanded with directions.

\* \* \*

PIERRON, J., concurring: I agree with the majority that the crime in question must be classified as a nonperson felony. However, I believe we need only cite to *State v. Murdock*, 299 Kan. 312, 319, 323 P.3d 846 (2014), where the court, after explaining the need to find the two prior out-of-state convictions must be scored as nonperson felonies states: "We recognize this rule results in the classification of all pre-1993 crimes as nonperson felonies—an outcome the State characterizes as unreasonable. But the solution to the State's complaint sits with the legislature."