No. 110,186

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY H. MARTINEZ,
*Appellant*.

SYLLABUS BY THE COURT

1.

When calculating a defendant's criminal history score, any municipal ordinance violations comparable to qualifying misdemeanors under Kansas law shall be considered and scored. K.S.A. 2013 Supp. 21-6810(d)(5).

2.

When determining whether a municipal ordinance violation is comparable with any misdemeanor under Kansas law, such comparison must be done in accordance with the penalty provisions in effect at the time the crime was committed.

3.

In determining what constitutes a comparable offense under the revised Kansas Sentencing Guidelines Act, K.S.A. 2013 Supp. 21-6801 *et seq.*, it is necessary to compare the elements of each offense, but the elements do not need to be identical. The essential questions are whether the offenses are similar in nature and cover similar conduct.

4.

Every three prior adult convictions of class A and class B person misdemeanors are to be aggregated into one adult person felony conviction when calculating a

1

defendant's criminal history. These convictions include any municipal ordinance violations comparable to class A and class B adult person misdemeanors.

5.

Under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. A narrow exception exists for the fact of a prior conviction because of the procedural safeguards which attach to such fact. As a result, tabulating a defendant's prior convictions to determine a criminal history score, which usually has the effect of increasing a defendant's sentence, does not violate a defendant's jury trial rights. However, when the district court is required to rely on facts outside of the mere fact of a prior conviction, then *Apprendi* is implicated.

6.

When the determination of whether a prior conviction qualifies as a sentence enhancer requires factual findings beyond the fact of the prior conviction itself, a sentencing court must use one of two approaches—the categorical approach or the modified categorical approach. Under the categorical approach, the sentencing court is to simply compare the elements of the statute forming the basis of the defendant's prior conviction with the elements of the corresponding "generic" crime. If the elements of the prior conviction are the same as or narrower than the elements of the corresponding "generic" crime, then the prior conviction may be counted as a predicate offense for sentence enhancement purposes.

7.

The modified categorical approach applies when the statute defining the elements of the prior conviction is broader than the corresponding "generic" offense. However, this approach may only be utilized when the prior conviction involves a "divisible statute,"

meaning a statute which comprises multiple, alternative versions of the crime, at least one of which matches the elements of the corresponding "generic" offense. In such an instance, the sentencing court cannot tell upon which version of the prior statute the defendant's conviction was based and therefore is permitted to look beyond the elements in the statutes and examine limited extra-statutory materials to determine which of a prior statute's alternative elements formed the basis of the defendant's prior conviction. Such extra-statutory materials include charging documents, plea agreements, jury instructions, verdict forms, and transcripts from plea colloquies as well as findings of fact and conclusions of law from a bench trial.

8.

The modified categorical approach may not be used if the prior statute is not divisible. Even if the statute is divisible, in some cases the modified categorical approach may not apply if none of the alternative elements in the prior statute matches any elements of the corresponding generic crime.

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion filed November 21, 2014. Sentence vacated, and case remanded with directions.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., PIERRON and POWELL, JJ.

POWELL, J.: Anthony H. Martinez appeals his sentence for failure to register under the Kansas Offender Registration Act. Martinez argues the district court improperly utilized three prior misdemeanor convictions to enhance his sentence, a violation of his jury trial rights under the Sixth Amendment to the United States

Constitution and contrary to the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and the more recent United States Supreme Court opinion in *Descamps v. United States*, 570 U.S.___, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013). Because we are uncertain after a review of the record whether Martinez' 1997 conviction for failing to comply with bond restrictions under a municipal ordinance involved impermissible contact with a third person, we must vacate Martinez' sentence and remand for further proceedings.

FACTS

In February 2013, Martinez entered a no contest plea to an offender registration violation, a severity level 6 person felony; his presentence investigation report (PSI) indicated he had a criminal history score of B in part because three municipal ordinance convictions were treated as person misdemeanors and aggregated to count as one person felony. At sentencing Martinez objected to the PSI, arguing to the district court that it could not use his three prior convictions for failing to comply with bond restrictions in violation of Wichita Municipal Ordinance § 1.04.125 in scoring his criminal history because the ordinance was not comparable to any person misdemeanors under Kansas law. Specifically, Martinez asserted that the municipal ordinance was broader in scope than the statute defining violation of a protective order, K.S.A. 2013 Supp. 21-5924, which was put forth by the State as the comparable statute for criminal history purposes. The district court overruled the objection, finding the municipal convictions were properly classified as person misdemeanors, and sentenced Martinez to 37 months in prison but granted a dispositional departure to 24 months' probation.

Martinez timely appeals.

4

DID THE DISTRICT COURT ERR IN CLASSIFYING MARTINEZ' MUNICIPAL CONVICTIONS WHEN IT CALCULATED HIS CRIMINAL HISTORY SCORE?

Martinez argues the district court erred in classifying his municipal convictions for failing to comply with bond restrictions as person misdemeanors for criminal history purposes. The State disagrees, arguing K.S.A. 2013 Supp. 21-6810(a) defines criminal history categories to include "convictions and adjudications for violations of municipal ordinances . . . which are comparable to any crime classified under the state law of Kansas as a person misdemeanor."

*Standard of Review*

The classification of prior convictions as person or nonperson crimes, as well as the interpretation of a sentencing statute, present questions of law in which our review is unlimited. See *State v. Jolly*, 291 Kan. 842, 845-46, 249 P.3d 421 (2011); *State v. Barajas*, 43 Kan. App. 2d 639, 642, 230 P.3d 784 (2010).

*Analysis*

A. *Is the Wichita municipal ordinance comparable to any misdemeanor statute for use in calculating Martinez' criminal history?*

The Revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2013 Supp. 21-6801 *et seq.*, provides that criminal sentences are essentially based on two controlling factors—the criminal history of the defendant and the severity level of the crime committed, with person crimes having a greater impact. *State v. Vandervort*, 276 Kan. 164, 178, 72 P.3d 925 (2003); see K.S.A. 2013 Supp. 21-6804(c). A defendant's criminal history score is calculated by tabulating the offender's prior convictions to generate a criminal history score, with A being the highest and I being the lowest. K.S.A. 2013

Supp. 21-6803(d). The more extensive the criminal history of the defendant and/or the greater the severity level of the crime, the lengthier the guideline sentence. See K.S.A. 2013 Supp. 21-6804(a).

K.S.A. 2013 Supp. 21-6810(d)(5) requires that municipal ordinance violations comparable to all person misdemeanors, class A nonperson misdemeanors, and class B select nonperson misdemeanors, be considered and scored in determining criminal history. Additionally, every three prior adult convictions of class A and class B person misdemeanors are to be aggregated into one adult person felony conviction for a defendant's criminal history purposes. K.S.A. 2013 Supp. 21-6811(a). These convictions include any municipal ordinance violations comparable to class A and class B adult person misdemeanors. *State v. Vega-Fuentes*, 264 Kan. 10, 15, 955 P.2d 1235 (1998). When determining whether such municipal ordinance violations are comparable with any misdemeanor under Kansas law, such comparison must be done "in accordance with the penalty provisions in effect at the time the crime was committed." *State v. Williams*, 291 Kan. 554, 560, 244 P.3d 667 (2010).

The issue here is whether Martinez' 1994, 1995, and 1997 convictions for violating Wichita Municipal Ordinance § 1.04.125 are comparable to any misdemeanor offense under Kansas law. The State argues that K.S.A. 2013 Supp. 21-5924(a)(4), violation of a protective order, is the comparable misdemeanor statute, while Martinez rejects this comparison.

We note at the outset, however, that neither party argues the comparable statute in effect at the time Martinez violated Wichita Municipal Ordinance § 1.04.125. Our task is to determine whether any misdemeanor offenses in effect in 1994, 1995, and 1997 compare to the municipal ordinance in question as those are the years in which Martinez committed his crimes. Our research has failed to find any comparable offenses for the years 1994 and 1995. However, in 1996, the legislature enacted K.S.A. 1996 Supp. 21-

6

3843, the predecessor statute to K.S.A. 2013 Supp. 21-5924 prior to its recodification, a violation of which was a class A person misdemeanor. L. 1996, ch. 208, sec. 2. Fortunately, its wording is almost identical to the current version of the statute, and therefore we can apply the parties' arguments concerning K.S.A. 2013 Supp. 21-5924(a)(4) to K.S.A. 1996 Supp. 21-3843(a)(4).

K.S.A. 1996 Supp. 21-3843(a)(4) defines violation of a protective order as knowingly violating "an order issued as a condition of pretrial release, diversion, probation, suspended sentence, or postrelease supervision that orders the person to refrain from having any direct or indirect contact with another person . . . ." The municipal ordinance in question, Wichita Municipal Ordinance § 1.04.125 Subsection (1)(a), provides:

> "Restrictions on Appearance Bonds. A municipal court judge may, to assure the public safety and the appearance of a person for trial, place restrictions on the association (including no contact orders with the victim or others) or place of abode of persons for violations of the code of the city during periods of release prior to trial, where a bond is posted for appearance before the municipal court pursuant to Charter Ordinance No. 122, K.S.A. 12-4301 and K.S.A. 12-4302."

In addition, § 1.04.125 Subsection (2) states:

> "Failure to Comply with Bond Conditions. Any person who is released from custody on an appearance bond, with or without surety, or on their own recognizance, that has restrictions placed on the bond pursuant to this section of the code, who knowingly violates or knowingly fails to comply with said restrictions shall be guilty of a misdemeanor, and upon conviction, shall be punished by a fine not to exceed two thousand-five hundred dollars and by imprisonment of not more than one year, or by both such fine and imprisonment."

7

In determining what constitutes a comparable offense under the KSGA, Kansas courts have found that while it is necessary to compare the elements of each offense, the elements do not need to be identical. The essential question is whether the offenses are similar in nature and cover similar conduct. See *Vandervort*, 276 Kan. at 178-79 (offenses need not have identical elements for purposes of being comparable under K.S.A. 21-4711[e]); *Barajas*, 43 Kan. App. 2d at 643-44 (offenses are comparable if they are similar in nature and cover a similar type of criminal conduct, but the elements need not be identical); *State v. Schultz*, 22 Kan. App. 2d 60, 62, 911 P.2d 1119 (1996) (offenses are comparable, even though they are differently worded, where they are similar in nature and cover similar types of criminal conduct).

Martinez argues the municipal convictions at issue are not directly comparable to a Kansas person misdemeanor because the municipal ordinance criminalizes acts beyond those covered in K.S.A. 1996 Supp. 21-3843(a)(4). He asserts that because there is not a "direct correlation between the elements," his convictions should not have been deemed person misdemeanors. Conversely, the State argues that while the municipal ordinance and K.S.A. 1996 Supp. 21-3843(a)(4) are not identical, they are similar in nature and cover a similar type of conduct. Section 1.04.125 expressly allows a municipal judge to place restrictions on association, including no contact orders with the victim or others. Likewise, K.S.A. 1996 Supp. 21-3843(a)(4) deals with orders requiring a person to refrain from having any direct or indirect contact with another person.

For the purpose of satisfying the requirements of K.S.A. 2013 Supp. 21-6810, we agree with the State that the essence of the municipal ordinance and K.S.A. 1996 Supp. 21-3843(a)(4) is the same. Martinez is basically arguing that the offenses must have identical elements, but as we have noted above, the statute does not require such exactitude. We hold that Wichita Municipal Ordinance § 1.04.125 is comparable to K.S.A. 1996 Supp. 21-3843(a)(4) for the purposes of K.S.A. 2013 Supp. 21-6810(d)(5).

B. *Did the district court impermissibly rely on facts other than the fact of a prior conviction to increase Martinez' criminal history score?*

However, our analysis does not end here because Martinez also argues that in order to classify the prior convictions at issue as person misdemeanors, the sentencing court had to engage in additional factfinding outside the facts proven by the mere existence of the prior convictions, which he claims violates the holdings in *Apprendi* and *Descamps*.

Initially, we note that *Descamps* was decided on June 20, 2013, so the district court here did not have the benefit of its guidance when it sentenced Martinez on April 4, 2013. While Martinez argued before the district court that the municipal ordinance was broader than K.S.A. 1996 Supp. 21-3843(a)(4), he raises the *Apprendi* argument for the first time on appeal. The Kansas Supreme Court, however, has reviewed *Apprendi* issues raised for the first time on appeal, and we will do so here. See *State v. Conley*, 270 Kan. 18, 30-31, 11 P.3d 1147 (2000), *cert. denied* 532 U.S. 932 (2001); see also *State v. Dickey,* 50 Kan. App. 2d 468, 472, 329 P.3d 1230 (2014) (consideration of *Descamps* claim for first time on appeal necessary to serve ends of justice and to prevent denial of fundamental right).

Under *Apprendi*, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The policy rationale behind *Apprendi* is that a court violates the United States Constitution if it invades the jury's territory by finding facts at sentencing. See *Shepard v. United States*, 544 U.S. 13, 25, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005) ("[T]he Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the State, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence."). A narrow exception exists for the fact of a prior conviction because

9

of the procedural safeguards which attach to such a fact. *Apprendi*, 530 U.S. at 488. As a result, in the typical case under our sentencing guidelines, tabulating a defendant's prior convictions to determine the criminal history score, which usually has the effect of increasing a defendant's sentence, does not violate a defendant's jury trial rights. *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002).

However, as Martinez correctly points out, when the district court is required to rely on facts outside of the mere fact of a prior conviction, then *Apprendi* is implicated. Martinez specifically relies on the recently issued opinion of *Descamps*, 133 S. Ct. 2276, where the United States Supreme Court held that a defendant's prior conviction for burglary under California law could not be counted as a predicate offense for burglary under the federal Armed Career Criminal Act (ACCA), which increases the sentences of defendants who have three prior convictions for violent felonies. Unlike the ACCA's "general burglary" definition, the California burglary statute at issue did not require unlawful entry as do most burglary laws; it provided that a "person who enters" certain locations "with intent to commit grand or petit larceny or any felony is guilty of burglary." California Penal Code Ann. § 459 (West 2010). The *Descamps* Court stated that the sentencing court would have had to look at Descamps' prior burglaries in order to determine whether he did break and enter or merely shoplifted in order to count the prior burglaries for ACCA purposes. The Court held that such an inquiry raised Sixth Amendment concerns because it required the sentencing court to invade the jury's factfinding territory. See 133 S. Ct. at 2281-87.

To determine whether a prior conviction qualified as a sentence enhancer under the ACCA, the *Descamps* Court held that the sentencing court must use one of two approaches—the categorical approach or the modified categorical approach. 133 S. Ct. at 2281-84, 2287; see also *Dickey,* 50 Kan. App. 2d at 483-84 (detailed discussion of categorical versus modified categorical approaches). Under the categorical approach, the sentencing court is to simply "compare the elements of the statute forming the basis of

the defendant's conviction with the elements of the 'generic' crime . . . ." 133 S. Ct. at 2281. If the elements of the prior conviction are the same as or narrower than the elements of the corresponding crime under the ACCA, then the prior conviction may be counted as a predicate offense for sentence enhancement purposes under the ACCA. 133 S. Ct. at 2281, 2283.

The modified categorical approach applies when the statute defining the elements of the prior offense in state law is broader than the corresponding generic offense as defined in the ACCA. *Descamps*, 133 S. Ct. at 2281, 2283-84. However, this approach may only be utilized when the prior conviction involves a "divisible statute," meaning a statute which comprises multiple, alternative versions of the crime, at least one of which matches the elements of the generic offense. 133 S. Ct. at 2281-82, 2284-85. In such an instance, the sentencing court cannot tell upon which version of the prior statute the defendant's conviction was based and therefore is permitted to look beyond the elements in the statutes and examine limited extra-statutory materials to determine "which of a [prior] statute's alternative elements formed the basis of the defendant's prior conviction." *Descamps*, 133 S. Ct. at 2284. Such extra-statutory materials include charging documents, plea agreements, jury instructions, verdict forms, and transcripts from plea colloquies as well as findings of fact and conclusions of law from a bench trial. *Johnson v. United States*, 559 U.S. 133, 144, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010).

However, the *Descamps* Court clarified that the modified categorical approach may not be used if the statute is not divisible. 133 S. Ct. at 2281-83. And, even if the statute is divisible, the modified categorical approach may not apply

> "because, in some cases, none of the alternative elements will match any elements of the corresponding generic crime. Post-*Descamps*, a case involving a prior statute of conviction for burglary containing alternative elements, none of which match any element of a generic statute, is virtually indistinguishable from a case involving a prior

11

statute of conviction for burglary containing a single and indivisible set of elements; thus, the modified approach has no role to play." *Dickey*, 50 Kan. App. 2d at 487 (citing *Descamps*, 133 S. Ct. at 2286).

Here, in order to avoid engaging in forbidden judicial factfinding, we must examine whether the elements of the prior offense at issue, Wichita Municipal Ordinance § 1.04.125, match the elements of the corresponding "generic" offense, K.S.A. 1996 Supp. 21-3843(a)(4). The State argues because the ordinance is a divisible one, the modified categorical approach applies. Martinez argues the ordinance is broader than the misdemeanor statute and the elements do not match. Martinez also argues another ordinance is much more analogous.

We think it irrelevant that another ordinance may be more analogous to the misdemeanor statute in question. If the elements of the municipal ordinance match those in the misdemeanor statute, then Martinez' Sixth Amendment rights are satisfied and it matters not what another ordinance may state. When reviewing both, it would appear that although the municipal ordinance is broader, contained within the ordinance are elements which prohibit contact with a third person, appearing to match the elements contained in the statute and suggesting that the modified categorical approach is applicable.

The operative language in the violation of a protective order statute, K.S.A. 1996 Supp. 21-3843(a)(4), "orders the person to refrain from having any direct or indirect contact with another person . . . ." In comparison, Wichita Municipal Ordinance § 1.04.125(1)(a) sets out alternative versions of the "Failure to Comply" crime under § 1.04.125(2). That is, the ordinance prohibits persons released from custody from knowingly violating or knowingly failing to comply with (a) "restrictions on [their] association (including no contact orders with the victim or others)" or (b) "place of abode." Alternative (a) matches the element in the misdemeanor statute, but alternative (b) does not. See 133 S. Ct. at 2281. Therefore, in order to determine whether Martinez

12

was convicted under alternative (a), we are permitted to examine in the record the appropriate extra-statutory materials. See *Johnson*, 559 U.S. at 144.

Unfortunately, because the sentencing hearing took place prior to the issuance of *Descamps,* the parties were not really focused on what documents were needed to establish that Martinez' 1997 failure to comply with bond restrictions involved having prohibited contact with a third person. At sentencing, the prosecutor provided the court with documents relating to Martinez' three municipal convictions for failing to comply with bond restrictions. Significantly, we note the record reveals that Martinez had five other person misdemeanors which were converted for criminal history purposes; thus, only one of his convictions for failure to comply with bond restrictions needed to qualify as a person misdemeanor in order to place Martinez in criminal history category B. Our review of the documents in the record leaves us uncertain whether Martinez' 1997 failure to comply with bond restrictions involved prohibited third person contact; therefore, we must vacate the defendant's sentence and remand the matter to the district court for a further examination of the appropriate extra-statutory materials to explore this question.

### DID THE DISTRICT COURT ERR WHEN IT INCREASED MARTINEZ' SENTENCE BASED ON HIS CRIMINAL HISTORY?

Finally, Martinez argues that the use of his criminal history to calculate his guidelines sentence was unconstitutional because his past convictions were not proved in this case to a jury. See *Apprendi*, 530 U.S. 466. As we have already suggested, our Supreme Court has rejected this argument, and we reject it as well. See *State v. Baker*, 297 Kan. 482, 485, 301 P.3d 706 (2013); *Ivory*, 273 Kan. at 46-48.

Sentence vacated, and case remanded with directions consistent with this opinion.