No. 96,850

STATE OF KANSAS, *Appellee*, v. GALEN D. YOUNGBLOOD, *Appellant*.

(206 P.3d 518)

Opinion filed May 8, 2009.

*Michelle A. Davis*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Jared S. Maag*, deputy solicitor general, argued the cause, and *Michael X. Llamas*, assistant county attorney, and *Paul J. Morrison*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Galen Youngblood appeals his conviction and sentence for possession of hallucinogenic drugs, as a second offense. He claims that the prior misdemeanor conviction used to elevate the severity level of his current crime from a misdemeanor to a

felony was unconstitutionally obtained without counsel or a valid waiver of counsel. Accordingly, Youngblood contends that the district court erred in convicting him of a felony in the current case. Finding the prior conviction to be constitutionally infirm, we reverse and remand.

*FACTUAL AND PROCEDURAL OVERVIEW*

In September 2004, Harvey County Sheriff's Department officers arrested Youngblood for driving on a suspended license. At the detention center, he was caught trying to discard a pipe, which subsequently tested positive for marijuana. The State charged Youngblood with driving while suspended, possession of drug paraphernalia, and possession of marijuana. Because of a prior misdemeanor possession of marijuana conviction in the Newton Municipal Court, the current possession of marijuana was charged as a felony pursuant to K.S.A. 65-4162(a), which provides:

"Except as otherwise provided, any person who violates this subsection shall be guilty of a class A nonperson misdemeanor. If any person has a prior conviction under this section, a conviction for a substantially similar offense from another jurisdiction or a conviction of a violation of an ordinance of any city or resolution of any county for a substantially similar offense if the substance involved was marijuana or tetrahydrocannabinol as designated in subsection (d) of K.S.A. 65-4105 and amendments thereto, then such person shall be guilty of a drug severity level 4 felony."

Youngblood filed a motion to dismiss the felony possession of marijuana count. He argued that because the municipal court conviction was uncounseled and he had not waived his right to counsel in municipal court, its use to enhance the marijuana charge from a class A misdemeanor to a drug severity level 4 felony violated his Sixth Amendment rights. The State conceded that the prior conviction was uncounseled but argued that Youngblood had waived his right to counsel in municipal court.

On February 15, 2005, the district court conducted a hearing on the motion to dismiss. Youngblood presented the municipal court docket sheet, a printed form on which the boxes for showing attorney representation and waiver of counsel were left blank in his case. The State submitted a waiver of attorney form from the mu-

nicipal court proceedings which had been signed by Youngblood. However, the form was dated November 1, 2004, which was over 3 weeks after Youngblood had been sentenced on the marijuana charge and after he had served 5 days in jail on a consolidated driving under the influence (DUI) charge.

The trial court took the matter under advisement so that it could review the case law cited by the parties. On February 28, 2005, the trial court issued a letter stating that it would allow the State to reopen the hearing on the motion. The court opined that the State had the burden of showing that the prior misdemeanor conviction was constitutionally obtained and that the new hearing was being offered to afford the State an opportunity to meet its burden. The court noted that, unless the State presented new evidence, the court could not find that the burden had been met.

The State got its second chance hearing on March 9, 2005. It presented the testimony of City of Newton Municipal Court Judge Brad Jantz. Judge Jantz testified that it was his practice to always discuss the waiver of counsel with defendants, but that he had no independent recollection of the actual discussion with Youngblood.

The trial court also heard evidence as to whether Youngblood actually served jail time as a consequence of the previous marijuana conviction. Judge Jantz testified that he had sentenced Youngblood to 6 months in jail on the possession of marijuana charge, and he believed that sentence was imposed consecutively to the DUI sentence. Youngblood was to serve the mandatory 5 days on the DUI conviction before being placed on probation on all of the charges in the case. On February 24, 2005, Youngblood's probation had been revoked and reinstated for 1 year, but he was ordered to spend an additional 2 days in jail.

Ultimately the trial court denied the motion to dismiss. The district court interpreted the case law as requiring the actual service of jail time to trigger the Sixth Amendment right to counsel. The court further opined that it was irrelevant that Youngblood had served actual jail time for his probation revocation, because at the original sentencing, he had been placed on probation. Additionally, the district court was persuaded by Judge Jantz' testimony that he always inquires about waiver of counsel.

The district court conducted a bench trial on September 1, 2005, based on stipulated evidence, which included the evidence presented at both hearings on the motion to dismiss. The trial court found Youngblood guilty of possession of hallucinogenic drugs, a second or subsequent offense, in violation of K.S.A. 65-4162(a)(3), a drug severity level 4 felony. Youngblood timely appealed, and the Court of Appeals affirmed his conviction.

We granted Youngblood's petition for review on the issue of whether the district court erred by enhancing the marijuana possession charge to a felony based upon a prior uncounseled municipal court conviction. The question has two components: (1) Whether Youngblood effectively waived his right to counsel in the municipal court prosecution; and (2) if not, whether the uncounseled municipal court conviction was unconstitutional so as to preclude its use to enhance the severity level of the crime in the subsequent prosecution.

## WAIVER OF COUNSEL

" '[T]he [S]tate has the burden of showing that an accused was advised of his right to counsel, either retained or appointed, and that waiver of counsel was knowingly and intelligently made.' " *In re Habeas Corpus Application of Gilchrist*, 238 Kan. 202, 208, 708 P.2d 977 (1985) (quoting *State v. Daniels*, 2 Kan. App. 2d 603, 605-06, 586 P.2d 50 [1978]). As the State acknowledges in its brief, a waiver of counsel may not be presumed from a silent record. See *State v. Allen*, 28 Kan. App. 2d 784, 788, 20 P.3d 747 (2001); *Daniels*, 2 Kan. App. 2d at 607.

Initially, the State submitted the post-dated waiver form to establish that Youngblood had waived counsel in the municipal proceeding. However, at the second hearing on Youngblood's motion to dismiss, the State focused on arguing that the right to counsel did not attach to the possession of marijuana charge in municipal court, rather than pursuing the argument that Youngblood had effectively waived his right to counsel. At that second hearing, the prosecutor did not ask the municipal judge a single question about the purported waiver.

However, the district court made its own inquiries about the waiver. In response to the district court's question as to what the municipal judge could tell the court about the waiver form which was signed after Youngblood had served his DUI jail time, the witness responded, "Very little." The municipal judge went on to say that occasionally a waiver form is filled out but not signed by an individual. In that case, the court will attempt to correct the oversight by having the form signed as soon as possible. The district court confirmed that the municipal judge did not dispute that the waiver form had been signed by both the judge and Youngblood on November 1, 2004, well after the plea hearing.

The municipal judge also answered in the affirmative to the district court's question: "Would it have been your practice at the time of the plea to ask if he waived counsel?" Pointedly, the district court did not inquire as to what the municipal judge would have advised Youngblood about his right to counsel, prior to asking whether he wished to waive it.

Defense counsel asked the municipal judge whether he had any independent recollection of whether Youngblood waived counsel on the day he pled or whether he waited to waive counsel until he signed the waiver form on November 1. The judge responded that he had "the general gist of the conversation with Mr. Youngblood in going through the standards, having done it hundreds of times with that inquiry but in terms of the exact quote of what he said, no. I don't." Again, no clarification was sought as to what "standards" the witness was referring or the nature and extent of the "inquiry" the municipal judge had made hundreds of times.

In *Gilchrist*, decided nearly two decades before Youngblood's municipal court appearance, this court clarified that the trial court must do more than simply ask a criminal defendant if he or she wants to waive counsel. "[T]he trial judge must advise the defendant of his right to counsel in 'clear and unequivocal language.' " 238 Kan. at 207. Moreover, a " 'person must be informed of the right to retained or appointed counsel before he or she can make a knowing and intelligent waiver of counsel.' " 238 Kan. at 207 (quoting *Daniels*, 2 Kan. App. 2d at 607).

Apparently, the State would have us accept on faith that the municipal judge's standard procedure includes sufficiently informing the defendant of his or her rights, so as to meet the criteria for a valid waiver. However, *Gilchrist* stressed the need to have either a record of the court proceedings in which a criminal defendant waives the right to counsel or a written waiver of counsel "for the purpose of proving an accused was properly advised of his rights and that he knowingly and intelligently waived those rights." 238 Kan. at 210.

With respect to municipal courts which are not courts of record, *Gilchrist* recognized the impracticability of a requirement that every waiver of counsel be recorded, but strongly urged municipal courts to obtain a written waiver. 238 Kan. at 209. The opinion went so far as to provide a suggested waiver of counsel form. 238 Kan. at 212. The benefit of such a practice is poignantly illustrated here. If the written waiver form had been executed at the plea hearing, we could be assured that Youngblood had received the advice to which he was due, *e.g.*, that he had a right to have an attorney represent him in defending the case and that if he could not afford an attorney and he was found indigent, one would be appointed for him.

Perhaps an argument could be made that Youngblood's subsequent signing of the waiver form was an admission that he had waived his right to counsel at the plea hearing. *Cf. Gilchrist*, 238 Kan. at 207-08 (finding defendant's later admission as to the truth of municipal judge's testimony on the circumstances of the waiver supported a finding that the waiver was valid). That argument would be more compelling if the municipal judge had testified that Youngblood read the waiver form or that it was read to him at the plea hearing, *i.e.*, that Youngblood had received advice on his right to counsel. It is not enough to show that Youngblood, after the fact, corroborated that he had waived counsel. The State must also prove that the *initial* waiver was properly obtained after appropriate advice as to the right to counsel, *i.e.*, that the plea hearing waiver was knowingly and intelligently made. A post-sentencing written waiver will not legitimize an invalid pre-plea waiver.

Accordingly, we affirm the Court of Appeals' holding that the State failed to carry its burden of proving that Youngblood was advised of his right to counsel and that a waiver of counsel was knowingly and intelligently made.

## USE OF UNCOUNSELED MISDEMEANOR CONVICTION

The district court's principal ruling was that Youngblood did not have a right to counsel on the possession of marijuana conviction in the municipal court because he was placed on probation for that charge; his initial 5 days' incarceration and the subsequent 2 days in jail for probation violation were attributable solely to the DUI conviction. The court opined that it made no difference that Youngblood's sentence included a term of incarceration which could be served if he subsequently violated the terms of his probation. Rather, the trial court interpreted precedent as establishing that the right to counsel in a misdemeanor case arises only when the misdemeanant is unconditionally ordered at the sentencing hearing to actually serve time in jail. Then, apparently relying on *State v. Delacruz*, 258 Kan. 129, 899 P.2d 1042 (1995), the district court found that the constitutionally obtained uncounseled misdemeanor conviction could be used to enhance the severity of the current crime under K.S.A. 65-4162(a).

In *Delacruz*, the defendant challenged the criminal history score used to establish his Kansas Sentencing Guidelines Act (KSGA) sentence for a felony drug conviction. The criminal history calculation had included the aggregation of three prior misdemeanor battery convictions to score as one person felony, pursuant to K.S.A. 1994 Supp. 21-4711(a). All three were alleged to be uncounseled municipal court convictions. For two of the misdemeanor convictions, the sentence was a fine, but no jail time. But for the third conviction, Delacruz was sentenced to 90 days in jail with the requirement that he serve 30 days, in addition to a fine. One of Delacruz' arguments on appeal was that the uncounseled misdemeanor convictions could not be collaterally used to enhance the sentence for the subsequent felony drug conviction because that would result in his serving additional jail time for the felony

based solely upon the uncounseled misdemeanors, which were inherently unreliable convictions.

*Delacruz* began its analysis by pointing out that not all defendants charged with a misdemeanor have the constitutional right to counsel first enunciated in *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d. 799, 83 S. Ct. 792 (1963). In *Scott v. Illinois*, 440 U.S. 367, 373-74, 59 L. Ed. 2d 383, 99 S. Ct. 1158 (1979), the United States Supreme Court held that an uncounseled misdemeanor conviction is constitutionally valid if the offender is not incarcerated. *Scott* was based on *Argersinger v. Hamlin*, 407 U.S. 25, 37, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972), which had recognized that actual imprisonment is a penalty different in kind from fines or threats of imprisonment. Thus, actual imprisonment was the bright-line demarcation between constitutional and unconstitutional uncounseled misdemeanor convictions. See *Delacruz*, 258 Kan. at 132.

*Delacruz* then looked at the collateral use of uncounseled misdemeanor convictions, noting that *Baldasar v. Illinois*, 446 U.S. 222, 64 L. Ed. 2d 169, 100 S. Ct. 1585 (1980), was decided a year after *Scott*. In *Baldasar*, the United States Supreme Court held that a prior uncounseled misdemeanor theft conviction could not be used to elevate a subsequent theft conviction to a felony under a state's repeat offender severity level enhancement law, even though the prior conviction did not result in actual imprisonment. 446 U.S. at 227-28. *Baldasar* reasoned that the defendant received an increased term of imprisonment in the subsequent case solely because of the prior uncounseled conviction. 446 U.S. at 227.

However, the United States Supreme Court subsequently reversed itself in *Nichols v. United States*, 511 U.S. 738, 128 L. Ed. 2d 745, 114 S. Ct. 1921 (1994). Adopting the rationale from the dissent in *Baldasar*, *Nichols* held that a prior uncounseled conviction which was valid under *Scott*, *i.e.*, where the defendant had not been actually incarcerated, "may be relied upon to enhance the sentence for a subsequent offense, even though that [later] sentence entails imprisonment." *Nichols*, 511 U.S. at 746-47. *Nichols* reasoned that enhancement statutes, whether criminal history provisions of sentencing guidelines or recidivist statutes, do not change the penalty imposed for the earlier conviction, but rather only pe-

nalize the last offense committed by the defendant. 511 U.S. at 747. Further, the opinion stated that its holding was also consistent with the traditional understanding of the sentencing process in which judges are permitted to consider a wide variety of factors. Those factors include not only a defendant's prior convictions, but also "a defendant's past criminal behavior, even if no conviction resulted from that behavior." 511 U.S. at 747.

*Delacruz* embraced *Nichols'* rationale and declared:

"We conclude the use of an uncounseled misdemeanor conviction that does not result in incarceration may be used in determining a defendant's criminal history under the Kansas Sentencing Guidelines even though it has the effect of enhancing his or her sentence under the guidelines. [Citation omitted.] Prior uncounseled misdemeanor convictions under *Scott* are constitutional where no jail time is imposed. If such convictions are constitutional, those convictions should and do remain constitutional in subsequent proceedings under the KSGA. . . . While the uncounseled misdemeanor is used to enhance the present sentence, the sentence imposed does not increase the penalty for that misdemeanor, and the defendant is being punished based on his current charge—a charge and proceeding where he is represented by counsel." 258 Kan. at 135-36.

Applying its holding, *Delacruz* noted that the sentence on the third conviction included actual jail time, but that the record before the court did not definitively establish whether Delacruz had been represented by counsel or had waived his right to counsel. Therefore, the case was remanded to the district court for a hearing on that issue. The district court was instructed that if the State was unable to establish by a preponderance of the evidence that Delacruz was either represented or had waived representation, the third battery conviction could not be included in his criminal history and the court must resentence him accordingly. In other words, while a constitutionally obtained uncounseled misdemeanor conviction can be used to enhance a subsequent sentence, an unconstitutionally obtained uncounseled misdemeanor conviction cannot be used for that collateral purpose. See *Delacruz*, 258 Kan. 129, Syl. ¶ 4.

After this court's decision in *Delacruz*, *Alabama v. Shelton*, 535 U.S. 654, 152 L. Ed. 2d 888, 122 S. Ct. 1764 (2002), expanded, or at least clarified, the circumstances under which the right to counsel would arise in a misdemeanor prosecution. In that case, after

Shelton was convicted of a misdemeanor without benefit of counsel, the trial court sentenced him to a 30-day jail term, but immediately suspended the jail term and placed him on probation for 2 years. On direct appeal, the Alabama Supreme Court opined that a suspended sentence constitutes a term of imprisonment within the meaning of *Argersinger* and *Scott*, even though actual incarceration is not immediate or inevitable. Accordingly, the Alabama court reversed and vacated the 30-day suspended jail time portion of the sentence, although it upheld Shelton's conviction and fine. The United States Supreme Court affirmed Alabama's decision, holding "that a suspended sentence that may 'end up in the actual deprivation of a person's liberty' may not be imposed unless the defendant was accorded 'the guiding hand of counsel' in the prosecution for the crime charged." *Shelton*, 535 U.S. at 658.

Our Court of Appeals acknowledged the holding in *Shelton*, but perceived that the narrow issue decided by that case was "whether a defendant may be jailed absent a counseled conviction." *State v. Youngblood*, No. 96,850, unpublished opinion filed April 25, 2008, slip op. at 6. The Court of Appeals focused on a portion of the *Shelton* majority opinion that distinguished *Nichols* as applying a less exacting standard. The rationale being that the sentencing court in Nichols' subsequent case could have imposed a more severe sentence based on evidence of the underlying conduct, even without the previous conviction. Given that *Nichols* was distinguishable from *Shelton* and that *Delacruz* was based on *Nichols*, the Court of Appeals opined that *Delacruz* was still good law after *Shelton* and mandated an affirmance of the district court. The Court of Appeals' reliance on an isolated portion of the *Shelton* opinion, which was lifted out of context, is misplaced.

First, the portion of *Shelton* quoted by the Court of Appeals was a supplementary rationale for rejecting the argument of *amicus curiae* that *Nichols* helped answer the question of whether the Sixth Amendment permits activation of a suspended sentence upon the defendant's violation of the terms of probation. 535 U.S. at 662-63. That is not the question before us. Moreover, the supplementary rationale proffered in the federal context would not be applicable under Kansas law, because evidence of Youngblood's

underlying conduct, standing alone, would not have permitted sentence enhancement. K.S.A. 65-4162(a) requires a "prior conviction." Likewise, "[c]riminal history categories contained in the sentencing guidelines grid for nondrug crimes and the sentencing guidelines grid for drug crimes are based on . . . *prior convictions*." (Emphasis added.) K.S.A. 21-4710(a). In short, the portion of *Shelton* upon which the Court of Appeals relied does not affect the case before us.

More importantly, the Court of Appeals' determination that *Delacruz* remains good law, by itself, does not answer the question before us. *Delacruz*, and its controlling authority, *Nichols*, focused on the collateral use of a valid, albeit uncounseled, prior misdemeanor conviction, *i.e.*, whether collaterally using a constitutionally valid uncounseled conviction to enhance a subsequent felony sentence constituted a new and independent Sixth Amendment violation. However, the question that Youngblood presents is whether, pursuant to the holding in *Shelton*, his Sixth Amendment right to counsel was violated in municipal court when the prior conviction was initially obtained, prior to its collateral use. If so, *Delacruz* clearly would not have allowed the unconstitutional conviction to be collaterally used. 258 Kan. 129, Syl. ¶ 4 (permitting use of tainted prior conviction for sentence enhancement would undermine principle of *Gideon*). Moreover, it would be counterintuitive to find that a conviction's unconstitutionality could be *cured* through a subsequent collateral use.

We turn, then, to what *Shelton* tells us about the constitutionality of Youngblood's municipal court misdemeanor conviction. The critical holding in *Shelton* dealt with the stage at which the Sixth Amendment right to counsel arises for a misdemeanant receiving a suspended or probated jail time sentence. Youngblood, like Shelton, received a jail sentence which was suspended with probation.

The *Shelton* dissent would have found that the imposition of a suspended or conditional sentence does not deprive the defendant of his or her personal liberty, so that the right to counsel would not arise until the State attempted to activate the suspended sentence and imprison the defendant. 535 U.S. at 676. However, the majority found "that the Sixth Amendment inquiry trains on the

stage of the proceedings corresponding to Shelton's Circuit Court trial, where his guilt was adjudicated, eligibility for imprisonment established, and prison sentence determined." 535 U.S. at 665. The majority noted that the issue at any subsequent probation revocation hearing to activate the suspended sentence would be whether the defendant breached the terms of probation; the validity or reliability of the underlying conviction would be beyond attack. 535 U.S. at 666. Therefore, the majority opined:

"We think it plain that a [probation revocation] hearing so timed and structured cannot compensate for the absence of trial counsel, for it does not even address the key Sixth Amendment inquiry: whether the adjudication of guilt corresponding to the prison sentence is sufficiently reliable to permit incarceration. Deprived of counsel when tried, convicted, and sentenced, and unable to challenge the original judgment at a subsequent probation revocation hearing, a defendant in Shelton's circumstances faces incarceration on a conviction that has never been subjected to 'the crucible of meaningful adversarial testing,' *United States v. Cronic*, 466 U.S. 648, 656[, 80 L. Ed. 2d 657, 104 S. Ct. 2039] (1984). The Sixth Amendment does not countenance this result." *Shelton*, 535 U.S. at 667.

Therefore, the majority was "[s]atisfied that Shelton is entitled to appointed counsel at the critical stage when his guilt or innocence of the charged crime is decided and his vulnerability to imprisonment is determined." 535 U.S. at 674. Likewise, Youngblood was entitled to counsel when the municipal court found him guilty and sentenced him to a jail term, even though the jail time was conditioned upon probation. The denial of that right to counsel renders the uncounseled misdemeanor conviction in municipal court unconstitutional under the Sixth Amendment. Accordingly, the unconstitutional conviction could not be collaterally used in district court for sentence enhancement. Youngblood's conviction for felony possession of hallucinogenic drugs is reversed.

Judgement of the Court of Appeals is reversed. Judgement of the district court is reversed and remanded.