NOT DESIGNATED FOR PUBLICATION

No. 113,902

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM COPPER,
*Appellant*.


MEMORANDUM OPINION


Appeal from Wyandotte District Court; R. WAYNE LAMPSON, judge. Opinion filed August 19, 2016. Sentence vacated and case remanded with directions.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Sheryl L. Lidtke*, chief deputy district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before POWELL, P.J., PIERRON and ATCHESON, JJ.


POWELL, J.: William Copper appeals the denial of his pro se motion to correct an illegal sentence in which he claimed, under *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *overruled by State v. Keel*, 302 Kan. 560, Syl. ¶ 9, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016), that the sentencing court incorrectly classified his three prior burglary convictions as person felonies, resulting in a higher criminal history score and, consequently, a longer sentence. Before us, Copper argues for the first time that his sentence was illegal because the district court engaged in improper judicial factfinding in order to classify two of his prior burglary convictions as person felonies in violation of

1

the Sixth Amendment to the United States Constitution as articulated in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Descamps v. United States*, 570 U.S. __, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013). Finding that the district court erred in denying Copper's motion, we vacate his sentence and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted Copper of aggravated robbery, and on October 5, 2001, the district court sentenced him to a mitigated sentence of 221 months in prison. Copper's criminal history score of A was based upon the sentencing court's classification as person felonies three prior burglary convictions: (1) a 1978 burglary conviction in Kansas; (2) a 1982 burglary conviction in Missouri; and (3) a 1997 burglary conviction in Kansas. On direct appeal, Copper did not challenge his criminal history score, and our court affirmed his conviction and sentence. *State v. Copper*, No. 88,295, unpublished opinion filed March 14, 2003. Copper subsequently filed a K.S.A. 60-1507 motion alleging ineffective assistance of counsel, but that claim was rejected on appeal. See *Copper v. State*, No. 95,553, 2006 WL 3409791 (Kan. App. 2006) (unpublished opinion).

Over a decade after he was originally sentenced, on June 9, 2014, Copper filed his present motion to correct an illegal sentence. Relying primarily on *Murdock*, 299 Kan. 312, he argued the sentencing court erred in classifying all of his prior burglary convictions as person felonies, resulting in an illegal sentence. Copper subsequently filed an amended motion mostly reprising his *Murdock* arguments but added a citation to *State v. Dickey*, 50 Kan. App. 2d 468, 329 P.3d 1230 (2014), *aff'd* 301 Kan. 1018, 350 P.3d 1054 (2015). The district court denied the motion, stating Copper's sentence was final and *Murdock* did not apply retroactively to final cases.

Copper timely appeals.

2

DID THE DISTRICT COURT ERR IN DENYING COPPER'S
MOTION TO CORRECT AN ILLEGAL SENTENCE?


On appeal, Copper drops the challenge to his sentence based upon *Murdock*, 299 Kan. 312, presumably because *Murdock* has been overruled by *Keel*, 302 Kan. 560. Instead, Copper contends for the first time that the sentencing court erred when it classified his 1978 Kansas burglary conviction and his 1982 Missouri burglary conviction as person offenses by implicitly engaging in impermissible judicial factfinding when it determined that these burglary convictions should be treated as the equivalent of burglary of a dwelling, a person felony under the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, in effect at the time Copper committed his current crime, *i.e.*, January 10, 2001. Copper contends such factfinding by the judge rather than a jury increased the penalty for his primary offense, violating his rights under the Sixth and Fourteenth Amendments to the United States Constitution as articulated by *Apprendi*, 530 U.S. 466, and *Descamps*, 133 S. Ct. 2276. We note that Copper does not challenge on appeal the designation of his 1997 Kansas burglary conviction as a person felony; therefore, we consider that issue to be abandoned. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013) (issue not briefed is deemed waived and abandoned).

> "An 'illegal sentence' is: (1) a sentence imposed by a court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in character or the term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served. [Citation omitted.]" *State v. Taylor*, 299 Kan. 5, 8, 319 P.3d 1256 (2014).

While a motion to correct an illegal sentence is typically an improper procedural vehicle for a constitutional claim, *State v. Warrior*, 303 Kan. 1008, 1010, 368 P.3d 1111 (2016), when a constitutional challenge results in a determination that a defendant's criminal history score is incorrect, the resulting sentence does not conform to the applicable statutory provision regarding the term authorized and is illegal. *State v. Luarks*, 302 Kan.

972, 975, 360 P.3d 418 (2015). As the movant, Copper bears the burden of proof of establishing his sentence's illegality. See *State v. Neal*, 292 Kan. 625, 633, 258 P.3d 365 (2011). Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which we exercise unlimited review. *Taylor*, 299 Kan. at 8.

The KSGA provides that criminal sentences are essentially based on two controlling factors: the criminal history of the defendant and the severity level of the crime committed, with person crimes having a greater impact. See K.S.A. 21-4704(c); *State v. Vandervort*, 276 Kan. 164, 178, 72 P.3d 925 (2003) (quoting *State v. Fifer*, 20 Kan. App. 2d 12, 15, 881 P.2d 589, *rev. denied* 256 Kan. 996 [1994]), *overruled in part on other grounds by State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015). A defendant's criminal history score is calculated by tabulating the offender's prior convictions to generate a criminal history score, with A being the highest and I being the lowest. See K.S.A. 21-4703(d); K.S.A. 21-4704(a); K.S.A. 21-4705(a). Prior convictions or adjudications are classified as either misdemeanors or felonies, person or nonperson, with some exceptions. See K.S.A. 21-4710; K.S.A. 21-4711. The more extensive the defendant's criminal history and/or the greater the severity level of the crime, the lengthier the guideline sentence. See K.S.A. 21-4704(a); K.S.A. 21-4705(a). Prior burglary convictions must be classified as person or nonperson. K.S.A. 21-4711(d). "[T]he distinction between person and nonperson burglaries under K.S.A. [21-4711(d)] hinges on whether the offender burglarized a dwelling." *State v. Cordell*, 302 Kan. 531, 534, 354 P.3d 1202 (2015).

Copper specifically argues that under *Apprendi* and *Descamps* the sentencing court erred in classifying his 1978 Kansas burglary conviction and his 1982 Missouri burglary conviction as person felonies because such classifications required the court to make factual findings that these burglaries had been committed in dwellings without requiring the State to prove such facts to a jury beyond a reasonable doubt.

4

"Under *Apprendi*, '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' 530 U.S. at 490. The policy rationale behind *Apprendi* is that a court violates the United States Constitution if it invades the jury's territory by finding facts at sentencing. See *Shepard v. United States*, 544 U.S. 13, 25, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005) (plurality opinion) ('[T]he Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the State, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence.'). A narrow exception exists for judicial factfinding regarding the existence of a prior conviction because of the procedural safeguards which attach to such a fact. *Apprendi*, 530 U.S. at 488. As a result, in the typical case under our sentencing guidelines, tabulating a defendant's prior convictions to determine the criminal history score, which usually has the effect of increasing a defendant's sentence, does not violate a defendant's jury trial rights. See *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002)." *Dickey*, 301 Kan. at 1036.

In *Descamps*, 133 S. Ct. 2276, the United States Supreme Court held that a defendant's prior conviction for burglary under California law could not be counted as a predicate offense for burglary under the federal Armed Career Criminal Act (ACCA), which increases the sentences of defendants who have three prior convictions for violent felonies. Unlike the ACCA's "general burglary" definition, the California burglary statute at issue did not require unlawful entry as do most burglary laws; it provided that a "person who enters" certain locations "with intent to commit grand or petit larceny or any felony is guilty of burglary." Cal. Penal Code § 459 (West 2010). The *Descamps* Court stated that the sentencing court would have had to look at Descamps' prior burglaries in order to determine whether he did break and enter or merely shoplifted in order to count the prior burglaries for ACCA purposes. The Court held that such an inquiry raised Sixth Amendment concerns because it required the sentencing court to invade the jury's factfinding territory. See 133 S. Ct. at 2281-87.

To determine whether a prior conviction qualified as a sentence enhancer under the ACCA, the *Descamps* Court held that a sentencing court must use one of two approaches—the categorical approach or the modified categorical approach. 133 S. Ct. at 2281-84, 2287; see also *Dickey*, 301 Kan. at 1036-39 (detailed discussion of categorical versus modified categorical approaches). Under the categorical approach, the sentencing court is to simply "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime." 133 S. Ct. at 2281. If the elements of the prior conviction are the same as or narrower than the elements of the corresponding crime under the ACCA, then the prior conviction may be counted as a predicate offense for sentence enhancement purposes under the ACCA. 133 S. Ct. at 2281, 2283.

The modified categorical approach applies when the statute defining the elements of the prior offense in state law is broader than the corresponding generic offense as defined in the ACCA. *Descamps*, 133 S. Ct. at 2281, 2283-84. However, this approach may only be utilized when the prior conviction involves a "divisible statute," meaning a statute which comprises multiple, alternative versions of the crime, at least one of which matches the elements of the generic offense. 133 S. Ct. at 2281-82, 2284-86. In such an instance, the sentencing court is permitted to look beyond the elements in the statutes and examine limited extra-statutory materials to determine "which of a [prior] statute's alternative elements formed the basis of the defendant's prior conviction." *Descamps*, 133 S. Ct. at 2284. Such extra-statutory materials include charging documents, plea agreements, jury instructions, verdict forms, and transcripts from plea colloquies as well as findings of fact and conclusions of law from a bench trial. *Johnson v. United States*, 559 U.S. 133, 144, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010).

In *Dickey*, 301 Kan. at 1039, our Supreme Court explicitly adopted the *Descamps* categorical/modified categorical approach in "determining whether a prior burglary conviction should be classified as a person or nonperson felony under the KSGA." The

6

court ultimately held that although the pre-KSGA Kansas burglary statute under which Dickey had previously been convicted was divisible, as it had "multiple, alternative versions of the crime, none included an element requiring that the structure burglarized be a dwelling." 301 Kan. at 1039. Therefore, it was constitutionally impermissible to classify Dickey's prior burglary adjudication as a person crime because to do so would have required judicial factfinding beyond merely identifying the statutory elements. 301 Kan. at 1039-40.

A.     *Retroactivity of* Dickey

The State raises no procedural bar to Copper's claim, perhaps recognizing that we have jurisdiction under K.S.A. 22-3504(1) to correct an illegal sentence at any time and that we may consider such questions for the first time on appeal. See *State v. Kelly*, 298 Kan. 965, 975, 318 P.3d 987 (2014). Although the State admits *Dickey* is the controlling case, it argues that *Dickey* does not apply retroactively in Copper's case, contending it should not be applied to cases that were final before the opinion was issued.

The State is correct that when an appellate court decision changes the law, that change generally acts prospectively and only applies to cases that are pending on direct review or not yet final on the date of the decision. *State v. Mitchell*, 297 Kan. 118, 124-25, 298 P.3d 349 (2013).

> "'Under *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), a new rule of constitutional criminal procedure is not applied retroactively on collateral review unless (1) it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to prosecute, or (2) it is a watershed rule requiring the observance of those procedures that are implicit in the concept of ordered liberty.' [Citation omitted.]" *Drach v. Bruce*, 281 Kan. 1058, 1072, 136 P.3d 390 (2006), *cert. denied* 549 U.S. 1278 (2007).

7

The State argues the rule in *Dickey* does not fit either of these categories.

Unfortunately for the State, as it acknowledges, a panel of our court has addressed this argument to the State's detriment in *State v. Martin*, 52 Kan. App. 2d 474, 369 P.3d 959 (2016), *petition for rev. filed* May 5, 2016. The *Martin* panel, relying on *Neal*, 292 Kan. at 630-31, principally found the

> "retroactivity analysis is not applicable when it is determined by a court that a constitutional error affects the defendant's criminal history score resulting in an illegal sentence. The legislative directive in K.S.A. 22-3504(1) allows courts to correct an illegal sentence at any time. Thus, we conclude that a claim under *Dickey* may be brought by a defendant in a motion to correct illegal sentence even when the time for direct appeal has passed and the defendant's sentence is final." 52 Kan. App. 2d at 483-84.

In *Neal*, our Supreme Court was confronted with the question of whether two uncounseled municipal person misdemeanors should be aggregated to form a single person felony for purposes of calculating the defendant's criminal history. Neal was convicted in 2000 of several serious offenses, including second-degree murder, and his presentence investigation report (PSI) showed that three municipal person misdemeanors—1987 and 1988 battery convictions and a 1998 conviction for violating a protective order—had been aggregated to form a single person felony. Neal never filed a formal motion challenging his criminal history score, and the district court imposed sentence. On direct appeal, Neal challenged his criminal history score but not on the basis of the misdemeanors' aggregation, and our court upheld his convictions and sentences. *Neal*, 292 Kan. at 626-27.

In August 2007, approximately 7 years after his convictions, Neal filed a pro se motion to correct an illegal sentence, contending the district court had erred in aggregating his municipal misdemeanor convictions into a person felony because two of these convictions—the 1987 and 1988 battery convictions, which had resulted in

8

suspended jail sentences—were uncounseled and therefore should not have been included in his criminal history. Neal claimed that because these two cases were improperly included in his criminal history, his criminal history score was incorrect, making his sentence illegal. His motion was denied by the district court.

On appeal, a panel of this court rejected Neal's claim and, relying on *State v. Delacruz*, 258 Kan. 129, 899 P.2d 1042 (1995), held that uncounseled convictions could be included in a defendant's criminal history provided the convictions did not result in incarceration even if the inclusion of these convictions resulted in the enhancement of the defendant's sentence. *State v. Neal*, No. 100,366, 2009 WL 1140329, at *3 (Kan. App. 2009) (unpublished opinion). Our Supreme Court reversed, explaining that while our court had correctly articulated the holding from *Delacruz* concerning the use of uncounseled misdemeanors, it had

> "refined some aspects of *Delacruz*' holding in . . . *State v. Youngblood*, 288 Kan. 659[, 206 P.3d 518 (2009)]. After a lengthy review of *Delacruz* and after consideration of the United States Supreme Court's later decision in *Alabama v. Shelton*, 535 U.S. 654, 122 S. Ct. 1764, 152 L. Ed. 2d 888 (2002), we eliminated the *Delacruz* bright-line 'actual imprisonment' rule [and] pronounced the law as follows:
>
> "'A person accused of a misdemeanor has a Sixth Amendment right to counsel if the sentence to be imposed upon conviction includes a term of imprisonment, *even if the jail time is suspended or conditioned upon a term of* probation. . . .' [*Youngblood*,] 288 Kan. 659, Syl. ¶ 2." *Neal*, 292 Kan. at 633.

As result, our Supreme Court held that because Neal's 1987 and 1988 burglary convictions had prison sentences imposed but were conditioned upon a term of probation, he had a constitutional right to counsel in both cases. 292 Kan. at 635.

9

We are not bound by the *Martin* panel's conclusion that *Neal* made the retroactivity analysis inapplicable to motions to correct an illegal sentence on the grounds that such motions can be brought at any time. See *State v. Urban*, 291 Kan. 214, 223, 239 P.3d 837 (2010) (one Court of Appeals panel not bound by another). However, we find its conclusion inescapable because to reach its result in *Neal*, our Supreme Court side-stepped without explanation two well-established legal principles in deciding the legality of a sentence: (1) The "fundamental rule of sentencing that the penalty parameters for a crime are established at the time the crime was committed," *Keel*, 302 Kan. 560, Syl. ¶ 9, and (2) "the general rule [] that the new [rule of constitutional criminal procedure] will not be applied to cases on collateral attack." *Gaudina v. State*, 278 Kan. 103, 105, 92 P.3d 574 (2004).

From our vantage point, it appears the *Neal* court applied the new rule concerning the treatment of uncounseled misdemeanor convictions as expressed in *State v. Youngblood*, 288 Kan. 659, Syl. ¶ 2, 206 P.3d 518 (2009)—which was not the rule at the time Neal committed his crimes, when he was sentenced, or when the case became final on direct appeal—while *Neal* was on collateral review. Admittedly, the *Neal* court could have harmonized its holding with prior case law by explaining that *Youngblood* merely applied *Alabama v. Shelton*, 535 U.S. 654, 122 S. Ct. 1764, 152 L. Ed. 2d 888 (2002), upon which *Youngblood* relies and which was decided before *Neal* became final on direct appeal; however, it chose not to. Therefore, we can only conclude, as did the *Martin* panel, that because a motion to correct an illegal sentence may be procedurally brought at any time, new constitutional rules of criminal procedure are to be applied at the time the motion to correct an illegal sentence is pending before the court. See 52 Kan. App. 2d at 484.

We observe, however, that the rule espoused in *Neal* creates an injustice. While inapplicable to Copper, those defendants who properly challenged their sentences on direct appeal and received an adverse result based upon the law as it existed at the time

10

would be barred by res judicata from any future effort to take advantage of a subsequent beneficial change in the law, while those defendants who never challenged their sentences on direct appeal are now free to take advantage of future beneficial changes in the law through a motion to correct an illegal sentence. See *State v. Conley*, 287 Kan. 696, 698-99, 197 P.3d 837 (2008) (motion to correct illegal sentence barred by res judicata as issue was raised and decided on its merits in prior appeal); see generally *State v. Goodman*, No. 111,431, 2015 WL 1882149, at *5 (Kan. App.) (unpublished opinion) ("Prior to *Descamps*, our court rejected the applicability of the *Apprendi* rule to the classification of prior convictions and adjudications for purposes of determining a defendant's criminal history score even when it was necessary for the sentencing judge to engage in additional factfinding."), *rev. denied* 303 Kan. ___ (December 17, 2015); accord *State v. May*, 39 Kan. App. 2d 990, 997, 186 P.3d 847 ("whether [the defendant's] prior burglaries were of a dwelling is a sentencing factor and not an element of the present crime so as to invoke the provisions *Apprendi*"), *rev. denied* 287 Kan. 768 (2008), *overruled on other grounds by State v. Daws*, 303 Kan. 785, 786, 368 P.3d 1074 (2016); *State v. Sloan*, No. 105,145, 2012 WL 308537, at *3-4 (Kan. App. 2012) (unpublished opinion) (defendant's criminal history does not implicate *Apprendi* but is mere sentencing factor), *rev. denied* 296 Kan. 1135 (2013); *State v. Berwert*, No. 100,226, 2009 WL 2436681, at *6 (Kan. App. 2009) (unpublished opinion) (facts necessary to classify defendant's 1964 prior burglary need not be proven to jury beyond reasonable doubt), *rev. denied* 290 Kan. 1096 (2010).

Nevertheless, because we are bound by our Supreme Court's decision in *Neal*, see *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011) (our court duty bound to follow Kansas Supreme Court precedent), *rev. denied* 294 Kan. 946 (2012), we must apply *Apprendi* and *Descamps* as applied by our Supreme Court in *Dickey* to the case at hand. We therefore turn to the merits of Copper's claim.

B.      *Prior Burglary Convictions*

When the sentencing court calculated Copper's criminal history score, it scored three prior burglary convictions as person felonies, making Copper's criminal history score A. As noted, Copper has waived his challenge to the classification of his 1997 Kansas burglary conviction; therefore, if Copper is correct and the sentencing court had scored his 1978 Kansas burglary conviction and his 1982 Missouri burglary conviction as nonperson felonies, Copper's criminal history score would have been C, reducing his sentencing range from 247 to 221 months to 107 to 96 months. See K.S.A. 21-4704(a); K.S.A. 21-3427.

   1.      *1978 Kansas Burglary Conviction*

Copper argues the sentencing court violated the constitutional rule announced in *Apprendi*, clarified in *Descamps*, and applied by *Dickey* by classifying his 1978 Kansas burglary conviction as a person felony because in order for the court to do so, it must have made a finding of fact that this burglary involved a dwelling. See K.S.A. 21-3715. The State concedes that if we apply the *Dickey* analysis here, then the district court erroneously classified Copper's 1978 Kansas burglary conviction as a person felony. As required by the holding in *Dickey*, Copper's 1978 Kansas burglary conviction must be scored as a nonperson felony because K.S.A. 21-3715 (Weeks)—the statute under which Copper's 1978 conviction arose—does not distinguish between dwellings and nondwellings.

   2.      *1982 Missouri Burglary Conviction*

Copper also argues the sentencing court's classification of his 1982 Missouri burglary conviction as a person felony was erroneous. According to Copper, the Missouri burglary statute in effect at the time of that conviction is most comparable to the Kansas

statute for burglary of a nondwelling and his prior conviction should have been classified as a nonperson felony. The State counters that, in order to resolve this issue, we must look at a number of documents related to Copper's conviction to determine the elements of that conviction. According to the State, the record on appeal is legally insufficient to conduct this analysis and we should remand the case for further findings by the district court. We agree.

In determining a defendant's criminal history, the KSGA requires the scoring of out-of-state prior convictions:

> "Out-of-state convictions and juvenile adjudications will be used in classifying the offender's criminal history. An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction. If a crime is a felony in another state, it will be counted as a felony in Kansas. The state of Kansas shall classify the crime as person or nonperson. In designating a crime as person or nonperson comparable offenses shall be referred to. If the state of Kansas does not have a comparable offense, the out-of-state conviction shall be classified as a nonperson crime. Convictions or adjudications occurring within the federal system, other state systems, the District of Columbia, foreign, tribal or military courts are considered out-of-state convictions or adjudications. The facts required to classify out-of-state adult convictions and juvenile adjudications must be established by the state by a preponderance of the evidence." K.S.A. 21-4711(e).

Copper does not challenge, and Missouri law clearly provides, that his 1982 Missouri burglary conviction is a felony. See Mo. Rev. Stat. §§ 569.160 and 569.170 (1978). Our next task, then, is to determine whether his Missouri felony burglary conviction should be classified as a person or nonperson crime. To accomplish this task, we refer to the comparable Kansas statutes in effect at the time the current crime of conviction was committed. *Keel*, 302 Kan. 560, Syl. ¶ 9. It is well established that in evaluating what offenses are comparable under the KSGA, "[t]he essential question is whether the offenses are similar in nature and cover similar conduct." *State v. Martinez*,

50 Kan. App. 2d 1244, 1249, 338 P.3d 1236 (2014). We look for the Kansas offense that is the "closest approximation" or most "comparable." *Vandervort*, 276 Kan. at 179. In making this comparison, the elements of each out-of-state crime do not need to be identical to the elements of a Kansas crime for them to be comparable. 276 Kan. at 179. Offenses may be comparable "even when the out-of-state statute encompassed some acts not necessarily encompassed by the Kansas statute." *State v. Riolo*, 50 Kan. App. 2d 351, 356-57, 330 P.3d 1120 (2014), *rev. denied* 302 Kan. 1019 (2015).

The burglary statute in effect at the time Copper committed his current crime of aggravated robbery states:

> "Burglary is knowingly and without authority entering into or remaining within any:
>
> (a) Building, manufactured home, mobile home, tent or other structure which is a dwelling, with intent to commit a felony, theft or sexual battery therein;
>
> (b) building, manufactured home, mobile home, tent or other structure which is not a dwelling, with intent to commit a felony, theft or sexual battery therein; or
>
> (c) motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony, theft or sexual battery therein.
>
> "Burglary as described in subsection (a) is a severity level 7, person felony. Burglary as described in subsection (b) is a severity level 7, nonperson felony. Burglary as described in subsection (c) is a severity level 9, nonperson felony." K.S.A. 21-3715.

K.S.A. 21-3110(7) defines a dwelling as "a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence."

Unfortunately, the record does not reflect under which Missouri burglary statute Copper was convicted. In 1982, Missouri law provided for two types of burglary:

14

burglary in the first degree and burglary in the second degree. Burglary in the first degree was defined as follows:

"1. A person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime:
    (1) Is armed with explosives or a deadly weapon or;
    (2) Causes or threatens immediate physical injury to any person who is not a participant in the crime; or
    (3) There is present in the structure another person who is not a participant in the crime.
    "2. Burglary in the first degree is a class B felony." Mo. Rev. Stat. § 569.160 (1978).

Burglary in the second degree was defined as follows:

"1. A person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein.
    "2. Burglary in the second degree is a class C felony." Mo. Rev. Stat. § 569.170 (1978).

Missouri law at the time also defined "inhabitable structure" as follows:

"(2) 'Inhabitable structure' includes a ship, trailer, sleeping car, airplane, or other vehicle or structure:
    (a) Where any person lives or carries on business or other calling; or
    (b) Where people assemble for purposes of business, government, education, religion, entertainment or public transportation; or

15

(c) Which is used for overnight accommodation of persons. Any such vehicle or structure is 'inhabitable' regardless of whether a person is actually present." Mo. Rev. Stat. § 569.010(2) (1978).

Assuming that Copper was convicted of the lesser Missouri offense of burglary in the second degree, we have no trouble concluding as a matter of law that the Kansas burglary statute and the Missouri second-degree burglary statute are broadly comparable. The rub is whether the Missouri second-degree burglary statute is comparable to Kansas' person burglary statute. See K.S.A. 21-4711(d) (prior burglary convictions must be classified as either person or nonperson). "[T]he distinction between person and nonperson burglaries under K.S.A. [21-4711(d)] hinges on whether the offender burglarized a dwelling." *State v. Cordell*, 302 Kan. 531, 534, 354 P.3d 1202 (2015).

As previously explained, use of the modified categorical approach is proper "when the statute forming the basis of the prior conviction is a 'divisible statute,' *i.e.*, a statute which includes multiple, alternative versions of the crime and at least one of the versions matches the elements of the [Kansas] offense." *Dickey*, 301 Kan. at 1037. We agree with those authorities that have held the Missouri statute to be divisible. See *State v. Wetrich*, No. 112,361, 2016 WL 197808, at *5 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* February 16, 2016; *State v. Hill*, No. 112,545, 2015 WL 8590700, at *6 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* January 6, 2016; *State v. Farley*, No. 109,655, 2014 WL 5345895, at *7 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. ___ (2015). The real question is whether the alternative element— "inhabitable structure"—matches Kansas burglary's "dwelling" element.

The key phrase in the Kansas burglary statute defining a dwelling is whether the structure "is used or intended for use as a human habitation, home or residence." K.S.A. 21-3110(7). By comparison, the definition of "inhabitable structure" as used in the Missouri second-degree burglary statute includes a structure "[w]here any person lives"

16

or "[w]hich is used for overnight accommodation of persons." Mo. Rev. Stat. § 569.010(2)(a) and (c) (1978). We conclude, therefore, that at least one of the elements of Missouri second-degree burglary matches the Kansas person burglary statute.

This similarity notwithstanding, there is no information in the record showing that the sentencing court examined the appropriate documents to see whether Copper's Missouri burglary was performed in a dwelling. Accordingly, because of this lack of information and because we are unsure under which Missouri burglary statute Copper was convicted, we remand the matter with directions for the district court to examine Copper's Missouri burglary conviction as provided by *Dickey*.

Finally, Copper also argues that his Missouri burglary conviction cannot be classified as a person felony because the intent element in the Missouri statute is broader than the Kansas burglary statute, requiring the district court to make impermissible factual findings. We reject Copper's argument on this point and agree with the reasoning set forth by two other panels of our court that intent is irrelevant in determining whether an out-of-state burglary conviction should be classified as a person or nonperson crime. See *State v. Moore*, 52 Kan. App. 2d 799, ___ P.3d ___, 2016 WL 3548863, at *9 (No. 113,545, filed June 24, 2016); *State v. Buell*, 52 Kan. App. 2d 818, Syl. ¶ 9, ___ P.3d ___, 2016 WL 3548925 (No. 113,881, filed June 24, 2016).

Sentence vacated and case remanded with directions.

\* \* \*

ATCHESON, J., concurring:  I generally concur in the majority opinion and join in the result. But I don't see the injustice my colleagues "observe" in that outcome. They suggest preclusion principles would prevent criminal defendants who had litigated and lost arguments on direct appeal for classifying their burglary convictions as nonperson felonies for criminal history purposes before the decisions in *Descamps v. United States*,

17

570 U.S. __, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), and *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015), from now seeking relief through motions to correct an illegal sentence under K.S.A. 22-3504(1). Conversely, however, they say those defendants, like Copper, who have never raised the point before may successfully challenge their criminal histories. Hence, the injustice. Issue preclusion, properly applied, shouldn't lead to that result.

Obviously, a motion to correct an illegal sentence is filed in a criminal case, and it may be filed "at any time," even after the judgment has become final. K.S.A. 22-3504(1). The motion is not a new or separate legal action. The applicable preclusion doctrine, therefore, is law of the case. See *State v. Collier*, 263 Kan. 629, Syl. ¶ 2, 952 P.2d 1326 (1998) (law of the case "applied to avoid indefinite relitigation of the same issue" and "to obtain consistent results in the same litigation"); *State v. West*, 46 Kan. App. 2d 732, 735-36, 281 P.3d 529 (2011) (Under law of the case, "an argument once made to and resolved by an appellate court becomes 'the law' in that case and generally cannot be challenged in a second appeal."). In short, the rule bars repetitive argument of an issue in a single case once that issue has been decided on appeal. 46 Kan. App. 2d at 736. Law of the case, however, yields and permits reconsideration of an issue if the original determination "is clearly erroneous" or "would cause manifest injustice." *Collier*, 263 Kan. 629, Syl. ¶ 3.

Here, the very injustice the majority outlines offers an example of a circumstance warranting review notwithstanding law of the case. So a criminal defendant having unsuccessfully challenged the treatment of a burglary conviction for criminal history purposes on direct appeal without the benefit of the *Descamps* and *Dickey* decisions and their refinement of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), could now revive that challenge in a motion to correct an illegal sentence. Accordingly, I am disinclined to say the result here might somehow perpetrate an injustice in a case of the sort the majority hypothesizes. Even if that were true, however, it should not preclude relief for Copper.

18

The Kansas Supreme Court's decision in *State v. Conley*, 287 Kan. 696, 197 P.3d 837 (2008), does not undercut my observation. There, the court applied what it termed "res judicata" to bar a criminal defendant's use of a motion to correct an illegal sentence to relitigate a sentencing issue raised and lost on direct appeal. 287 Kan. at 698-701. The court, however, never outlined the specific preclusion principles it applied. Basically, Conley filed a motion making precisely the same point he unsuccessfully asserted in his direct appeal without suggesting some newly discovered facts or recent changes in the governing law required a different result. As the court aptly put it, Conley simply wanted a "do-over" and conscripted a motion to correct an illegal sentence for that purpose. The court rejected the ploy because "the same issue could be endlessly raised despite adverse appellate determinations" through serially filed motions to correct an illegal sentence. 287 Kan. at 698. The court couched its ruling as an application of res judicata. 287 Kan. at 701.

The term "res judicata" may be used generically to encompass preclusion principles generally. See *In re Tax Appeal of Fleet*, 293 Kan. 768, 777, 272 P.3d 583 (2012) (district court's reference to res judicata "broad enough to encompass both claim and issue preclusion"); *In re Anderberg-Lund Printing Co.*, 109 F.3d 1343, 1346 (8th Cir. 1997) (binding effect of an adjudication "often generically termed res judicata"); Black's Law Dictionary 1504 (10th ed. 2014) (noting res judicata has been used as a general term referring to ways a judgment will have binding effect). In that broad sense, res judicata would refer to and include law of the case as a principle of issue preclusion. Given the procedural history in *Conley*, law of the case fits the circumstances and accomplishes the purpose the court outlined. Nothing in *Conley* suggests the court applied something other than law of the case to affirm the denial of the motion.

The term "res judicata," in its more common use, refers specifically to claim preclusion, a more narrow doctrine applicable to successive legal actions. Claim preclusion prevents a party to a suit that has ended with a judgment on the merits from

filing a new suit based on the same facts that asserts legal claims that were or could have been raised in the first action. See *Cain v. Jacox*, 302 Kan. 431, 434, 354 P.3d 431 (2015); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 259, 261 P.3d 943 (2011). Res judicata, then, applies to successive cases rather than within a single case. *West*, 46 Kan. App. 2d at 736. This more focused form of preclusion would have been inapplicable in *Conley*, since the motion to correct the illegal sentence was filed in the original criminal case.