NOT DESIGNATED FOR PUBLICATION

Nos. 119,961
119,962
119,963
120,090
120,091


IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEVEN LEE BISHOP,
*Appellant*.


MEMORANDUM OPINION


Appeal from Saline District Court; PATRICK H. THOMPSON, judge. Opinion filed December 20, 2019. Affirmed and remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Anna M. Jumpponen*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MALONE and POWELL, JJ.

PER CURIAM:  Steven Bishop appeals the revocation of his probation and modified sentence. Bishop fails to convince us that his probation should not have been revoked. And his criminal history score is correct. We affirm.

1

In five separate cases in Saline County, Bishop was convicted of several counts of forgery, theft, and possession of controlled substances. The district court originally sentenced Bishop to a suspended prison terms that totaled 120 months and placed him on probation. The court ordered a 12-month postrelease supervision period in each case. Because it has some bearing on the claims Bishop makes in this appeal, we mention an objection Bishop made at his first sentencing.

At this sentencing hearing, Bishop objected to setting his criminal history score of B. He contended there had been an improper use of two of his misdemeanor domestic battery convictions. He argued that since the pair had been used to raise his third domestic battery offense to a felony, then they could not be used again to convert three person misdemeanors into a person felony. He claimed this was improper double counting. The court overruled the objection.

Bishop failed at probation. At first, about six months after he was placed on probation, the court ordered a three-day sanction for his admitted probation violations. After that, the court ordered Bishop to serve a 180-day prison sanction for various probation violations. Finally, at his last hearing, Bishop stipulated to various probation violations and admitted he had been recently convicted in municipal court for disorderly conduct.

At the hearing on the third motion to revoke, Bishop admitted that he:

- failed to report to his supervisor;
- consumed drugs, alcohol, or other mood-altering chemicals;
- failed to submit UAs; and
- failed to comply with all drug court requirements.

The court reduced his prison sentence from 120 months to 68 months, revoked his probation, and sent him to prison.

To us, Bishop raises four issues:

1.    The court erred by converting in-state municipal convictions into a person felony in calculating his criminal history.
2.    Bishop's criminal history score is inaccurate because the court double counted his misdemeanor domestic battery convictions.
3.    The court did not impose a term of postrelease supervision at resentencing.
4.    The court abused its discretion in sending him to prison after revoking his probation.

We will address his issues in that order.

*The district court correctly calculated Bishop's criminal history.*

This issue presents a question of law that can be answered by comparing several of our sentencing statutes. When we interpret statutes, we must discover first the intent of the Legislature because that is what governs. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). To do so, we examine the statutory language enacted, giving common words their ordinary meanings. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). When we do this, we must consider various provisions of an act together with a view of reconciling and bringing the provisions into workable harmony if possible. *State v. Keel*, 302 Kan. 560, Syl. ¶ 7, 357 P.3d 251 (2015). This means we must consider these two statutes together to decide what the intent of the Legislature is on this point.

Bishop complains about the use of three misdemeanor convictions in setting his criminal history score as a B, reflecting two person convictions. This score was based on

3

adding a single person felony conviction with three "converted person misdemeanors." Two of the three were from Salina Municipal court. One was a violation of a protective order, and one was domestic battery. The third person misdemeanor was a domestic battery conviction in Saline District Court. Bishop argues that municipal court convictions cannot be used this way.

In his view, no Kansas statute permits the court to classify an in-state municipal court conviction as a class A or B misdemeanor. He contends that K.S.A. 2015 Supp. 21-6811(e)(2)(B) only explains how to classify out-of-state misdemeanors as class A, B, or C.

At this point, it helps to review the conversion process, where misdemeanor convictions are added and then considered together, they count as felonies when calculating an offender's criminal history score. The language in the law is clear. K.S.A. 2018 Supp. 21-6811(a) provides that when calculating an offender's criminal history score: "Every three prior adult convictions or juvenile adjudications of class A and class B person misdemeanors in the offender's criminal history, or any combination thereof, shall be rated as one adult conviction or one juvenile adjudication of a person felony for criminal history purposes." In other words, the convictions are "converted."

But for this rule to apply, the misdemeanors must be class A or B offenses (as opposed to class C). See K.S.A. 2018 Supp. 21-6811(a). While Bishop is correct that K.S.A. 2018 Supp. 21-6811(e)(2)(B) explains only how to classify "out-of-state" misdemeanors as class A, B, or C misdemeanors, it must be read in harmony with another statute—K.S.A. 2018 Supp. 21-6810.

That law—K.S.A. 2018 Supp. 21-6810—reveals the Legislature's intent for municipal court convictions for crimes *comparable* to misdemeanor offenses under state

law to be counted. The first section of the statute states just what convictions can be considered:

> "(a) *Criminal history categories contained in the sentencing guidelines grids are based on the following types of prior convictions:* Person felony adult convictions, nonperson felony adult convictions, person felony juvenile adjudications, nonperson felony juvenile adjudications, person misdemeanor adult convictions, nonperson class A misdemeanor adult convictions, person misdemeanor juvenile adjudications, nonperson class A misdemeanor juvenile adjudications, select class B nonperson misdemeanor adult convictions, select class B nonperson misdemeanor juvenile adjudications and convictions . . . ." (Emphasis added.)

Municipal court convictions are mentioned at the end of the list:

> "*Convictions and adjudications for violations of municipal ordinances* or county resolutions *which are comparable to any crime classified under the state law of Kansas as a person misdemeanor*, select nonperson class B misdemeanor or nonperson class A misdemeanor." (Emphasis added.) K.S.A. 2018 Supp. 21-6810(a).

Additional statutory authority is found in K.S.A. 2018 Supp. 21-6810(d), which lists 10 categories of convictions that are applicable to determining an offender's criminal history classification. Subsection (6) states: "*All person misdemeanors,* class A nonperson misdemeanors and class B select nonperson misdemeanors, *and all municipal ordinance and county resolution violations comparable to such misdemeanors, shall be considered and scored.*" (Emphases added.)

When we look at both, we note that the two provisions of K.S.A. 2018 Supp. 21-6810 refer to "comparable" state law misdemeanors. Thus, the first step is to classify the municipal conviction according to the comparable misdemeanor under state law. Like the person/nonperson designation, municipal convictions can be designated as class A, B, or C according to the designation of the comparable state misdemeanor. The second step is

to aggregate every three class A and class B person misdemeanors under K.S.A. 2018 Supp. 21-6811.

The Kansas Supreme Court conducted a similar analysis in *State v. Vega-Fuentes*, 264 Kan. 10, 16, 955 P.2d 1235 (1998). The court held that construing the statutes together "as this court is bound to do, reveals a clear expression of legislative intent that violations of municipal ordinances are to be treated as comparable misdemeanors for purposes of calculating criminal history, including aggregation." *Vega-Fuentes*, 264 Kan. at 16.

This court has followed *Vega-Fuentes* and has ruled that municipal court convictions could be aggregated:

> "[E]very three prior adult convictions of class A and class B person misdemeanors are to be aggregated into one adult person felony conviction for a defendant's criminal history purposes. K.S.A. 2013 Supp. 21-6811(a). These convictions include any municipal ordinance violations comparable to class A and class B adult person misdemeanors." *State v. Martinez*, 50 Kan. App. 2d 1244, 1248, 338 P.3d 1236 (2014).

Similarly, in *State v. Messinger*, 25 Kan. App. 2d 339, 340, 967 P.2d 1081 (1998), this court counted some municipal court convictions, but not all. The district court had aggregated Messinger's six municipal convictions—five batteries and one assault—into two person felonies. But because assault was a class C misdemeanor under state law, this court held that the assault conviction could not be aggregated with the others. Citing *Vega-Fuentes*, this court held that three of the municipal battery convictions could, however, be aggregated into one person felony. 25 Kan. App. 2d at 339-40.

Bishop's attempt to distinguish *Vega-Fuentes* is not persuasive. He argues that the court in that case did not identify a statutory mechanism to classify an in-state municipal misdemeanor as a class A or B offense. But the court did just that.

6

The *Vega-Fuentes* court held that the predecessor to K.S.A. 2018 Supp. 21-6810, which provides that all municipal ordinance violations comparable to misdemeanors, shall be considered and scored and the predecessor to K.S.A. 2018 Supp. 21-6811(a), which states that every three class A or B person misdemeanors shall be rated as one person felony, should be construed together. 264 Kan. at 16. As a result, violations of municipal ordinances are classified as A, B, or C based on the comparable state law misdemeanor, if any.

Bishop cites *State v. Horselooking*, 54 Kan. App. 2d 343, 400 P.d 189 (2017), for support. In that case, Horselooking complained about the court counting a Kickapoo tribal conviction for burglary as a felony when it determined his criminal history score. That is an out-of-state conviction. Because the Kickapoo Nation Tribal Code does not designate burglary as a felony or as a misdemeanor, Horselooking contended it was wrong for the court to rate the conviction as a felony. The *Horselooking* panel agreed and held it would not fill in a "silence-gap" in the statute and rule it was a felony. In other words, the court would not fill in the gaps in the statute and left that task to the Legislature. The court thus remanded for resentencing with directions to correct the criminal score to reflect that it was a misdemeanor conviction. 54 Kan. App. 2d at 354-55.

But we see no silence gap here.

Bishop's presentence investigation report identified the state offense of a violation of a protective order under K.S.A. 21-5924, a class A person misdemeanor, as the comparable offense to his violation of a protection order municipal conviction. See K.S.A. 2018 Supp. 21-5924(b)(1). The same report identified domestic battery under K.S.A. 21-5414, a class A or B person misdemeanor, as the comparable offense to his domestic battery municipal conviction. See K.S.A. 2018 Supp. 21-5414(c)(1)(A) and (B).

Bishop makes no argument that his municipal convictions were not like these class A or B person misdemeanors.

*Bishop's two misdemeanor domestic battery convictions were not double counted.*

Bishop contends that his misdemeanor domestic battery convictions were double counted, leading to an illegal sentence because they were used both to enhance his third domestic battery conviction from a misdemeanor to a felony and to elevate his criminal history score.

In his view, the misdemeanor domestic battery convictions were "used up" when they were used to enhance his third domestic battery conviction to a felony, so they cannot now be used for criminal history purposes.

A first conviction for domestic battery is a class B person misdemeanor. A second conviction for domestic battery within five years is a class A person misdemeanor. A third conviction for domestic battery within five years is a person felony. K.S.A. 2018 Supp. 21-5414(c)(1)(A)-(C).

Bishop was convicted of misdemeanor domestic battery in 2010 and 2011 and felony domestic battery in 2013.

Controlling this issue is K.S.A. 2018 Supp. 21-6810(d)(10). It limits how prior convictions may be used:

> "Prior convictions of any crime shall not be counted in determining the criminal history category if they *enhance the severity level, elevate the classification from misdemeanor to felony, or are elements of the present crime of conviction.* Except as

8

otherwise provided, all other prior convictions will be considered and scored." (Emphasis added.)

Bishop contends the phrase "of the present crime of conviction" modifies only the phrase "or are elements."

Bishop's interpretation leads to absurd results. If we followed his suggestion, the statute would then read, "[p]rior convictions of any crime shall not be counted in determining the criminal history category if they enhance the severity level." Or, "[p]rior convictions of any crime shall not be counted in determining the criminal history category if they elevate the classification for misdemeanor to felony." Or, "[p]rior convictions of any crime shall not be counted in determining the criminal history category if they are elements of the present crime of conviction." This parsing leaves us with two sentence fragments and one sentence.

Bishop tries to repair this defect by inserting "any offense" into both fragments. We interpret statutes. We do not rewrite them.

This court has consistently ruled to the contrary. Two misdemeanor domestic battery convictions can be used to both elevate a third domestic battery to a felony and be aggregated with another person misdemeanor to create a person felony. The reason is that none of the convictions were used to elevate the *present* crime of conviction from a misdemeanor to a felony. See *State v. Fowler*, 55 Kan. App. 2d 92, 101-02, 408 P.3d 119 (2017), *rev. granted* 308 Kan. 1597 (2018); *State v. Herrera,* No. 119,427, 2019 WL 2237237, at *2 (Kan. App. 2019) (unpublished opinion), *petition for rev. filed* June 21, 2019; *State v. Omar-Cruz*, No. 110,698, 2014 WL 6909677, at *5 (Kan. App. 2014) (unpublished opinion); *State v. Smith*, No. 107,266, 2013 WL 1339891, at *3 (Kan. App. 2013) (unpublished opinion); *State v. Temmen*, No. 104,326, 2011 WL 1878141, at *2 (Kan. App. 2011) (unpublished opinion); *State v. Smith*, No. 92,312, 2005 WL 1089054,

9

at *2 (Kan. App. 2005) (unpublished opinion); *State v. Grant*, No. 90,042, 2004 WL 719257, at *3-4 (Kan. App. 2004) (unpublished opinion).

We reject Bishop's position and hold that there was no double counting here and that his criminal history score is accurate.

*The district court did not impose a period of postrelease supervision.*

After revoking probation, the court modified Bishop's sentence. Unlike the original sentence, this modified sentence has no provision for postrelease supervision. Bishop asks for modified journal entries.

The State admits that the court did not impose any postrelease supervision but argues that since the court did not modify two of the sentences, the postrelease supervision ordered in them still applies.

That argument ignores the fact that the court modified all the sentences. A review shows our point.

At the original sentencing hearing, the court ruled the five cases "are all consecutive one to the other." The original journal entry in 15CR960 stated that the sentence was consecutive to the prior case in 15CR944. The original journal entry in 15CR319 stated that the sentence was consecutive to all the other cases.

In contrast, at the revocation hearing, the district court ruled:

> "I will remand you to serve your sentences but I will modify them as requested by the State so that cases 15 CR 960 and 16 CR 319 run consecutively . . . . The other 3, 15 CR

10

944, 16 CR 212 and 16 CR 295 will run concurrently. So you would have a controlling sentence of 68 months under the modified sentence."

On the journal entries of the revocation hearing for both cases in question, the court checked a box showing that it imposed the original sentence. But in the comments section the court wrote: "The Court modifies this case to run concurrently with 15CR944, 16CR212, and 16CR295." The journal entries further list 15CR944, 16CR212, and 16CR295 as cases running concurrently.

When a district court imposes a lawful lesser sentence upon revocation and is silent on the term of postrelease supervision, postrelease supervision is not part of the modified sentence. See *State v. Jones*, 56 Kan. App. 2d 556, 564-66, 433 P.3d 193 (2018). In *Jones*, this court ruled that the district court modified Jones' sentence by running her sentence concurrent with another case, rather than consecutive as originally ordered. 56 Kan. App. 2d at 564-66.

Here, the district court modified the sentences in 15CR960 and 16CR319 by making them concurrent with rather than consecutive to the other cases. The court did not announce a term of postrelease supervision for any of the cases from the bench. Thus, following *Jones*, there is no postrelease supervision order in any of the cases. All five journal entries should be corrected to reflect that no postrelease supervision was imposed.

*We find no abuse of discretion in the district court revoking Bishop's probation.*

Bishop asks us to reverse the court's order sending him to prison. He contends the district court's decision to send him to prison rather than a long-term care facility for his mental health issues was unreasonable.

11

Bishop stipulated to the probation violations. Once a probation violation has been established, the decision to revoke probation rests within the sound discretion of the district court. *State v. Skolaut*, 286 Kan. 219, 227-28, 182 P.3d 1231 (2008). A judicial action constitutes an abuse of discretion if the action is:

- arbitrary, fanciful, or unreasonable;

- based on an error of law; or

- based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

Bishop bears the burden to show an abuse of discretion. See *State v. Stafford*, 296 Kan. 25, 45, 290 P.3d 562 (2012).

The law, K.S.A. 2018 Supp. 22-3716(c), limits the court's discretion in deciding how to sanction a probation violator. Under the statute, a sentencing court should impose a series of intermediate, graduated sanctions before ordering a probation violator to serve his or her underlying sentence, unless certain exceptions apply. For example, the district court need not impose any intermediate sanction if the offender "commits a new felony or misdemeanor while the offender is on probation." K.S.A. 2018 Supp. 22-3716(c)(8)(A). If the court has previously imposed a 120- or 180-day sanction, the court need not impose another. K.S.A. 2018 Supp. 22-3716(c)(1)(E).

Bishop had exhausted the required graduated sanctions. He states no legal or factual basis on which the district court erred. Rather, he argues the district court's decision was unreasonable.

Bishop had been offered mental health and drug treatment but had failed to comply. His assigned corrections officer stated that there were no other services they could offer that had not already been tried. His probation officers had repeatedly tried to work with him. He had been given the highest level of supervision but could not comply.

12

Bishop had initially been granted dispositional departures to probation when his sentences were presumptive prison. He had sanctions imposed for probation violations on two prior occasions. He continued to violate the conditions of his probation, including getting arrested for disorderly conduct.

The district court acknowledged that prison was not a great option for Bishop but found that he had been given many alternative opportunities and shown he was unlikely to succeed on probation. The court did ultimately cut Bishop's prison time almost in half. It cannot be said that no reasonable person would agree with the district court's decision to revoke Bishop's probation.

With this record, we cannot hold that the court abused its discretion by sending Bishop to prison.

We affirm the revocation of Bishop's probation and the imposition of his prison sentence. We remand the case to the district court for reformation of the journal entries to show there is no postrelease supervision in any of the cases.

Affirmed and remanded with directions.